PIEHL *v.* PIEHL.

1. TRIAL—RECALLING WITNESS—DISCRETION OF COURT.
   Allowing a witness to be recalled to explain his former testimony is within the discretion of the court.

2. SAME—QUESTION FOR JURY—EXPLANATION BY WITNESS.
   Where a witness, on being recalled, testifies in direct conflict with his previous testimony, the reasonableness of his explanation is for the jury.

3. NOVATION—WHAT CONSTITUTES.
   The requisites of a novation are a valid prior obligation to be displaced, the consent of all parties to the substitution, a sufficient consideration, the extinction of the old obligation, and the creation of a valid new one.

4. SAME.
   Where the original debtor, after agreeing with a third party to pay the debt, dies before the creditor is informed of the arrangement, there is no novation.

5. SAME—EVIDENCE.
   Where suit is brought by one brother against another for a debt owing plaintiff by their father, on the theory of a novation, evidence that defendant promised his father to give his brother and sister each the amount sued for is immaterial.

Error to Cheboygan; Shepherd, J. Submitted November 30, 1904. (Docket No. 296.) Decided December 14, 1904.

Assumpsit by Frederick Piehl against Daniel Piehl for money had and received. There was judgment for plaintiff, and defendant brings error. Reversed.

Plaintiff and defendant are brothers. Their father, Frederick Piehl, Sr., lived in Canada, where he died in April, 1900. He had three sons and one daughter. In 1895 he transferred to the defendant all his property, except some money, on condition that he take care of him the rest of his life. The property was worth about $1,500.

The validity of the contract with his father is not assailed, and it appears conceded that he performed it. It was claimed by Catherine, the daughter, that, in consideration of the transfer, defendant agreed to pay her $400 upon her father's death. For this she brought suit and obtained a judgment, which was reversed by this court. *Ebel* v. *Piehl*, 134 Mich. 64. The declaration is upon the common counts in assumpsit. A bill of particulars was demanded and furnished, as follows:

" Amount due from Frederick Piehl, Sr., to Frederick Piehl, Jr., for cash loaned by said Frederick Piehl, Jr., to Frederick, Sr., at various times from 1877 to 1886, which said indebtedness Daniel Piehl assumed at the time he received an assignment of Frederick Piehl's property in 1896, and then and there promised and agreed to pay said amount to Frederick Piehl, Jr., upon the death of Frederick Piehl, Sr.—$400.00."

The plea was the general issue, with notice of set-off. The declaration is based upon the doctrine of a novation. The case was tried upon that theory, and the court submitted it to the jury upon that theory, stating that it was essential for the jury to find:

1. That the father, Frederick Piehl, Sr., was indebted to Frederick Piehl, Jr., in the sum of $400.

2. That the father turned his property over to defendant with the distinct promise on his part that he would pay his brother that $400.

3. That plaintiff assented to that agreement, discharged his father, and looked to defendant for payment.

4. That defendant promised the plaintiff to pay the $400.

The jury rendered a verdict for the plaintiff.

*Frost & Sprague*, for appellant.

*M. F. Guinon*, for appellee.

GRANT, J. *(after stating the facts)*. 1. It is urged that there is no evidence of an indebtedness from Mr. Piehl, Sr., to the plaintiff. When the plaintiff rested his

case there was no such evidence.   One Julia Mosser was called by the plaintiff to sustain his case, and she testified on direct examination as follows:

"*Q.* Was there anything said by the old gentleman at that time that they were making that agreement why he should pay Fred that $400 ?   *A.* No.

"*Q.* Didn't give any reasons?   *A.* No."

After plaintiff had rested, defendant moved to strike out plaintiff's testimony, and to direct a verdict for defendant.   One of the reasons was that no original indebtedness had been proved.   This question was argued just before a recess of the court.   Upon the reassembling of the court, plaintiff recalled Julia Mosser, and she testified as follows:

"I did not understand the questions asked me as to the reason for grandfather directing Dan Piehl to pay Fred Piehl $400, and I desire to change my testimony.

"*Q.* Will you state to the jury what your grandfather said as to the reason of having Dan pay Fred the $400 ? *A.* Well, he said he owed it to Fred, and Uncle Dan was to pay it."

On cross-examination she testified:

"I have talked with the attorney since I gave my testimony this morning.   They explained my testimony to me —what they wanted, and what it meant.   I do not know what I did not understand, and cannot remember any more.   All I know is that he got the money, and he was to pay Uncle Fred and Aunt Kate.   He owed Uncle Fred $400, and Uncle Dan was to pay that after his death. I cannot remember the conversation when Uncle Dan was there; it is too long ago."

The recall of this witness was in the discretion of the circuit judge.   Whether her explanation was reasonable was a question for the jury.   It is true that the testimony upon her second examination is in direct conflict with that given on her first.   While it may be difficult to understand how she could have misunderstood the question and answer given by her on her first examination, yet such matters are for the jury.   The only control the trial court

has over them is by motion to set aside the verdict, if, in its judgment, it is against the weight of the evidence.

2. The meritorious question is, Was there evidence of a contract of novation? The court correctly instructed the jury upon the requisites of such a contract, to wit, a valid prior obligation to be displaced, the consent of all parties to the substitution, a sufficient consideration, the extinction of the old obligation, and the creation of a valid new one. 21 Am. & Eng. Enc. Law (2d Ed.), p. 663; *Dean* v. *Ellis*, 108 Mich. 240; *Fuller & Rice Lumber & Manfg. Co.* v. *Houseman*, 117 Mich. 553; *Cornwell* v. *Megins*, 39 Minn. 407. Plaintiff was not present when the contract between defendant and his father was made. He was in Michigan. He could not discharge his father and agree to the substitution of the defendant as his debtor until he had knowledge of such agreement. There is no evidence that he knew of such agreement until after his father's death; there could therefore be no novation, neither was there one according to his own version of his conversation with defendant after his father's death. He testified that he attended the funeral; that on his return he went to defendant's house "to ask him if my father had left anything for me. I had looked over in Canada, and I could not find anything. * * * I came here as a brother, and asked you simply if father has left anything for me or not." Nowhere in his testimony does he intimate that he stated to defendant, or even hinted at, such a contract as the one upon which he now relies. The sister, Mrs. Ebel, testified to the same effect as she did in *Ebel* v. *Piehl*, supra, namely, that her father said to defendant:

"When I am dead I want you to give sister Kate $400, and your oldest brother (plaintiff) $400. I told you that when you got the money."

There is nothing in this or any other of her testimony to indicate that her father owed plaintiff, and that defendant agreed to pay it. The father, one of the parties to the claimed tripartite agreement, died before plaintiff knew,

or at least had assented to, the contract. He had not notified either his father or the defendant that he discharged the one and accepted the other. He could not consummate the agreement after his father's death. The court should, upon this record, have directed a verdict for the defendant.

3. In the event of a new trial it is proper to say that all testimony that the defendant promised to give his sister $400, or any other of his father's children $400, is immaterial, and should be excluded.

Judgment reversed, and new trial ordered.

The other Justices concurred.