MITCHAM v. CITY OF DETROIT.

1. CARRIERS—BUS—SUDDEN SWERVING AND STOPPING—SPEED—QUESTION FOR JURY—EVIDENCE.

Evidence presented in trackless motorbus passengers' actions against owner city for injuries sustained in sudden stopping of bus after it had swerved suddenly to the left at a place elsewhere than a regular stopping place *held*, to have presented for jury the question of whether driver of bus was negligent because he operated it at a speed or in a manner unsafe for the conditions present, contrary to statute, where it shows bus repeatedly lurched from side to side and stopped suddenly (CL 1929, § 4697, as last amended by PA 1939, No 318).

REFERENCES FOR POINTS IN HEADNOTES

[1] 5A Am Jur, Automobiles § 499.
[2] 5A Am Jur, Automobiles §§ 800, 802.
[3] 38 Am Jur, Negligence § 295 *et seq.*
[4] 53 Am Jur, Trial § 367 *et seq.*
[5, 6] 5A Am Jur, Automobiles §§ 212, 499.
[7] 1 Am Jur, Actions § 5.
[8] 53 Am Jur, Trial § 123 *et seq.*
[9] 3 Am Jur, Appeal and Error §§ 770, 776.
[10] 14 Am Jur, Costs § 20.

2. SAME—PASSENGERS—CONTRIBUTORY NEGLIGENCE—COMPLAINT AS
TO DRIVER'S CONDUCT.

> A bus passenger is not necessarily guilty of contributory negligence as a matter of law in failing to actively complain about the driver's conduct of the bus or get off before reaching destination.

3. NEGLIGENCE—RES IPSA LOQUITUR.

> The doctrine of *res ipsa loquitur* draws its main force and vitality from the situation of the parties and its application should not be made to depend upon or be restricted to the accidental ability of a given plaintiff to relate a case warranting holding the defendant guilty of negligence as a matter of law.

4. TRIAL—MOTION FOR DIRECTED VERDICT—SUBSEQUENT TESTIMONY
OF DEFENDANT.

> The trial court should consider a defendant's proofs that are offered after reservation of a motion for a directed verdict in determining whether to grant or deny such motion (CL 1948, §§ 618.56, 618.57, 691.691 *et seq.*).

5. CARRIERS—SUDDEN STOPPING—EMERGENCY—NEGLIGENCE.

> While a carrier is not liable for injuries to a passenger occasioned by application of emergency brakes in order to avoid or prevent an imminent danger not otherwise avoidable and one which it is reasonable to believe will not be attended with more serious consequences than the sudden application of the brakes, if the danger sought to be avoided by the sudden application of the brakes is due to the carrier's negligence, the carrier will not be excused from liability for injury to a passenger occasioned by the sudden stopping of the vehicle.

6. SAME—NEGLIGENCE—EVIDENCE.

> Testimony by plaintiffs, bus passengers, in their action against city, that bus was suddenly swerved and stopped without warning and severely injured plaintiff wife as refuted by testimony of bus driver that he did so to avoid collision with a car but which permitted inference that the bus driver was following the other car too closely, which testimony was presented by defendant after denial of its motion for directed verdict at close of plaintiffs' case *held*, to have presented issue of bus driver's negligence to jury (CL 1948, §§ 618.56, 618.57, 691.691 *et seq.*).

7. COURTS—PURPOSE OF LITIGATION.

> The primary purpose of litigation is to elicit facts, assess blame and try to do justice between the parties.

8. TRIAL—REOPENING PROOFS—DISCRETION OF COURT.
   Whether or not a plaintiff's motion to reopen proofs may be granted is within the discretion of the trial court.

9. APPEAL AND ERROR—BRIEFS—ABANDONMENT OF QUESTIONS.
   Cross appellant is deemed to have abandoned questions it sought to have reviewed in the event of reversal, where questions are either not stated in statement of questions involved or not adequately briefed (Court Rule No 67 [1945]).

10. COSTS—CONSOLIDATED CASES.
    Single costs are allowed in consolidated cases of husband and wife against same defendant for injuries to wife.

Appeal from Wayne; Moynihan (Joseph A.), J. Submitted June 4, 1958. (Docket No. 15, Calendar No. 45,760.) Decided January 12, 1959.

Case by Burleigh Mitcham against the City of Detroit, Department of Street Railways, for personal injuries sustained while a passenger on bus.

Similar action by Sage Mitcham for medical expenses in connection with wife's injuries.

Cases consolidated for trial and appeal. Judgments for defendant *non obstante veredicto*. Plaintiffs appeal. Defendant cross-appeals. Reversed and remanded for entry of judgments on verdicts.

*Douglas Leo Paterson*, for plaintiffs.

*A. Albert Bonczak*, for defendant.

VOELKER, J. The plaintiffs, husband and wife (by stipulation their cases were tried and appealed as one), were passengers in the defendant's municipally operated trackless motor coach. They were seated on a side seat running lengthwise and facing the aisle. At a point not at a street intersection and not at a regular bus stop the coach without warning

swerved suddenly to the left and stopped abruptly, pitching the wife violently forward against an adjoining upright metal stanchion and severely injuring her. In due course she filed suit, her husband filing a companion suit to recover certain medical and other expenses and losses. The accident occurred on June 7, 1947.

At the trial the plaintiffs testified in addition to the foregoing that from the time they had gotten seated on the bus it began and continued "weaving and turning;" the wife said that she kept watching traffic and watching the driver "because his turns were so quick;" that he made a "quick stop" to pick up passengers; that prior to the accident he was "zig-zagging" and was passing cars, "pulling in and out, working in and out" until he made a "sharp cut" and "sudden stop, no warning whatsoever." The husband testified that prior to the accident the coach had been, to use his words, "twisting" and "reeling and rocking;" that at one regular stop to load passengers, prior to the accident, he had to "grab hold of the seat" because of the suddenness of the stop; that when the accident occurred he had to grab for the metal stanchion to avoid being thrown and injured; that he also kept "watching the driver" because he was "afraid of an injury." Both plaintiffs testified, in substance, that from where they sat they were unable to see or tell precisely why the coach swerved and came to a sudden stop, nor could they do so later because of the ensuing concern and excitement, and, also, that because neither of them drove cars neither could tell how fast the bus had been travelling.

The plaintiffs also produced rather detailed proofs on the severity and extent of the wife's injuries, the nature of her treatment (including a sojourn at the Mayo Clinic), and the prolonged course of her convalescence. At the close of plaintiffs' proofs the de-

fendant moved for a directed verdict because of plaintiffs' failure to prove defendant's negligence or make out a prima facie case. The court reserved* its ruling and the defendant proceeded to put in certain proofs. At the close of all proofs the defendant on the same grounds renewed its motion for a directed verdict, which was reserved* by the court, and the jury brought in verdicts for both plaintiffs. Defendant thereupon made timely motions for judgment notwithstanding such verdicts which the court ultimately granted. The plaintiffs have appealed.

In his opinion holding that the plaintiffs had not made out a sufficient case to go to the jury the learned trial judge observed that "To my mind this case comes in that category of ever-growing line of decisions that there can be no recovery for the sudden stopping or starting of streetcars or buses. The circumstances of swerving and weaving standing alone does not raise a presumption of negligence."

With this holding we must respectfully disagree. We think that under the trend of our recent decisions construing the rule of "favorable view" coupled with Michigan's unacknowledged version of *res ipsa loquitur*, known within our borders more wordily as the doctrine of "circumstantial evidence of negligence," that these plaintiffs had at the close of their proofs made out a sufficient case to entitle them to go to a jury. More specifically we think that plaintiffs' testimony created at least a permissible inference, for one thing, that the defendant's bus driver may have been operating his bus at a speed or in a manner unsafe for the conditions present, contrary to the statute as it then stood (and, so far as this case is concerned, not since materially changed),† and that

---

* See CL 1948, § 691.691 *et seq*. (Stat Ann and Stat Ann 1957 Cum Supp § 27.1461 *et seq*.)

† Version in effect at time of accident: CL 1929, § 4697, as last amended by PA 1939, No 318 (CLS 1940, § 4697 [Stat Ann 1940

therefore a jury question as to defendant's possible negligence was presented. For recent applications or discussions of the Michigan doctrine of circumstantial evidence of negligence see *Kaminski* v. *Grand Trunk W. R. Co.*, 347 Mich 417; *Higdon* v. *Carlebach*, 348 Mich 363; and 65 CJS, Negligence, § 220(2), pp 991, 992. Further cases will be cited presently.

That our law possesses no special grudge against possible recovery by passengers against public carriers in cases of this nature we think is sufficiently demonstrated by cases like *Adelsperger* v. *City of Detroit*, 248 Mich 399 and *Routhier* v. *City of Detroit*, 338 Mich 449 (40 ALR2d 1114). In those cases we concede that plaintiffs' proofs were perhaps measurably stronger than those shown here; we cite them merely to show that we nourish no settled aversion to occasional recovery by passengers in public conveyances. On the other hand we think that something more than a mere sudden swerve and stop was shown by the plaintiffs in the present case, thus bringing the case within the rationale, if not the precise facts, of our decision in *Longfellow* v. *City of Detroit*, 302 Mich 542. We need not and do not hold that plaintiffs' testimony necessarily showed negligence on the part of the defendant's driver; we deem it sufficient to hold that, in our opinion, plaintiffs showed enough from which reasonable men might have reasonably inferred and concluded that the defendant had been guilty of actionable negligence.

Referring again to the *Higdon Case, supra,* we note that Mr. Justice BLACK there wryly observed (pp 374, 375) that "we apply *res ipsa loquitur* as we primly deny doing so." He quotes Dean King to the

Cum Supp § 9.1565]); now re-enacted and superseded by the following portion of the Michigan vehicle code of 1949 (CLS 1956, § 257.627 [Stat Ann 1957 Cum Supp § 9.2327]).

same general effect. We may add that we seem frequently to apply our version of *"res ipsa"* much as a disdainful lady might proclaim her profound aversion to strong drink just as she is tossing off a bumper of patent medicine harboring enough alcohol to floor a stevedore.

Ironically enough, the Michigan version of the doctrine of *res ipsa loquitur* in some respects plainly "out ipsas *res ipsa*," as it were; and thus we find that in some of our cases we speak boldly of a "presumption of negligence" (see *Barnowsky* v. *Helson,* 89 Mich 523, 525 (15 LRA 33) where we said "the fact of such happening [the falling of a roof] raises a presumption of negligence in some one")* whereas many out-and-out *"res ipsa"* jurisdictions speak more softly (as we ourselves usually do) only of an "inference of negligence." For a discussion of this point and the practical difference, if any, see 2 Harper & James, The Law of Torts (1956), § 19.11, p 1099 *et seq.,* particularly pages 1101 and 1102. Thus we remark some of the dangers lurking in calling a rose by another name; in the past we were sometimes braver than we knew.

We also reject the resourceful suggestion of defendant (doubtless borrowed from the "guest-passenger" cases) that plaintiffs' prior observations, if they showed anything, proved only their contributory negligence but still failed to make out a jury case. To hold thus would be in effect to invoke a rule that apprehensive and fearful passengers on such conveyances must become "back-seat drivers;" that they owe an active duty to complain; and that they must henceforth either beg the operator to be more careful or perforce get off before their destinations. Such a proposition we cannot accept.

---

* We also note that the learned trial judge in our present case employs the same expression.

There are overtones in some of our cases that our Michigan doctrine of "circumstantial evidence of negligence" somehow does not or should not apply to actions between passengers and public carriers, especially in cases of this nature. Wittingly or otherwise we have lent some credence to the notion that this is an exclusive area of negligence law mysteriously walled off from all others and sufficient unto itself. We will concede that our research has disclosed a prodigious number of injured passengers who have indeed been successfully walled off from recovery by our decisions, one way or another; but it should be sufficient answer to any such notion, if indeed it exists, that the very doctrine of *res ipsa loquitur* was itself born in actions between passenger and carrier; it was long the classic situation for invoking it. Thus *"res ipsa loquitur* was most often invoked in early cases by a passenger against a carrier." (2 Harper and James, The Law of Torts (1956), § 19.6, pp 1083, 1084.) To the same effect see Prosser on Torts (2d ed), § 42, p 201.

As noted, our Court has blown both hot and cold on this subject, but mostly cold. That we have not invariably thrown upon the injured passenger the often impossible burden of pointing out by direct evidence on his main case the specific breach of duty by the carrier resulting in injury, especially where the carrier is in sole possession of the facts, we think is sufficiently demonstrated by cases like *Durfey* v. *Milligan,* 265 Mich 97 and *Trent* v. *Pontiac Transportation Co., Inc.,* 281 Mich 586 (2 NCCA NS 485) (citing cases). See, also, *Crase* v. *City of Detroit,* 341 Mich 132. (Incidentally, in the rather factually unusual *Durfey* "bird cage" *Case* [p 100] our Court quoted with approval the bold "presumption-of-negligence-in-someone" phrase already quoted by us from the *Barnowsky Case, supra.*)

While we are about it we venture to suggest, without deciding, that if the plaintiffs in this case had been sitting farther back on the bus, and therefore saw less and consequently told less than they did see and tell, their case might still have properly gone to the jury. The point we seek to make is that the case for invoking the doctrine of *res ipsa loquitur* draws its main force and vitality from the *situation* of the parties. Its application should not be made to depend upon or be restricted to the accidental ability of a given plaintiff to relate a glowing testimonial case approaching impregnability to a defense motion for directed verdict even without invocation of the doctrine. That would be to restrict application of the doctrine largely to those least in need of it and to make any possible recovery depend pretty much upon the blind accident of where a passenger might have stood or sat when he was injured. This we do not understand to be the controlling test for the application of the doctrine.

Finally, we direct attention to the characteristically lucid comments of Mr. Justice Smith on this whole prickly and needlessly murky subject of *res ipsa loquitur* in his searching opinion in *Indiana Lumbermans Mutual Insurance Co.* v. *Matthew Stores,* 349 Mich 441, beginning at page 452. By whatever euphemisms we may choose to call it, we suspect that *res ipsa loquitur* is here to stay.

---

We have proceeded thus far without referring to any proofs offered by the defendant, in the same manner as though it had offered none at all. In view of what follows we think we should now give the gist of defendant's proofs, testified to by its bus driver. He testified that he was proceeding along "fighting traffic" in second gear when he observed an erratic driver of a passenger car "one car length

ahead of me—5 feet to the right of me;" that he followed this car closely some 70 feet continuously "fighting traffic;" that he was obliged to maintain a schedule because the company had "men to check to see that I maintain that schedule;" that he kept watching this erratic driver "because like a lot of people he was, I don't know, he was looking for something he couldn't find;" that he was trying to pass him; that what attracted his attention to this driver was "well I noticed he was lost; he must have been, you could tell the way they drive; looked like he was window-shopping, looking for a street to turn in. * * * He almost drove into the monument;" that he was driving the bus between 10 and 15 miles per hour in second gear when this unknown driver thus described suddenly turned his car in front of the bus whereupon the witness bus driver swerved suddenly and applied the brakes because, in his own expressive idiom, "If I did not put on the brakes he would have went." It appears that the bus driver then got out and remonstrated not too gently with this unknown driver but did not get his name or license number.

Plaintiffs urge that in these circumstances recourse should be had by us to defendant's proofs in determining the propriety of the action by the trial court, which is the subject of this appeal, and that moreover in later considering the motion he had earlier reserved the trial judge himself should have done so. Defendant urges that the applicable statute* and our decided cases (exemplified by *Snyder* v.

---

* PA 1899, No 182, as re-enacted by PA 1915, No 314, ch 18, §§ 56, 57 (CL 1948, §§ 618.56, 618.57 [Stat Ann §§ 27.1036, 27.1037]), read as follows:

"Sec. 56. Upon the trial of any case in any of the circuit courts in this State the defendant, upon the conclusion of the plaintiff's testimony, may request the court to direct the jury to bring in a verdict for the defendant, or make demurrer to the evidence, without resting his case absolutely."

"Sec. 57. Upon the refusal of the court to grant such motion, the defendant shall have the benefit of an exception, as in ordinary

*Johnson,* 264 Mich 286 and *Wasyluk* v. *Lubienski,* 244 Mich 695, among others) forbids any such course. Since the trial court did not discuss the point we think it may, by its action, fairly be deemed to have tacitly adopted the view of the defendant, namely, that upon later consideration of an earlier defense motion for directed verdict first made at the close of plaintiff's proofs, only the state of the plaintiff's proofs *at that time* may ever be considered regardless of what the defendant may have later submitted as proofs. We think the subject is worth exploring.

We should note in passing that prior to the 1899 statute there was considerable authority for the proposition that despite a defense motion for peremptory verdict the trial court might consider any subsequent proofs offered by defendant which tended to help bolster the plaintiff's case. See *Gibbons* v. *Farwell,* 63 Mich 344 (6 Am St Rep 301); *Green* v. *Gill,* 47 Mich 86, and other early cases cited in *Wasyluk* v. *Lubienski, supra,* at 697. We further note that the 1899 statute by its terms did not expressly forbid such a consideration; that notion has crept into our law largely as a result of judicial interpretation.

We think that in situations where the Michigan version of the doctrine of *res ipsa loquitur* may be said to apply (and we think it applies here), that where the defendant chooses to offer proofs in an attempt to explain away or avoid, if he can, the inference of negligence thus created, upon later renewal of his earlier reserved (and thus denied) motion for a directed verdict the trial court not only may but should carefully scrutinize and weigh the defense proofs thus offered. And we should do likewise upon appeal. Any other view could hurt a defendant as much as the plaintiff. A contrary view would also be tantamount to holding that the 1899

cases, and without waiving such exception may then introduce testimony and make his defense upon the merits."

statute had legislated effective *res ipsa loquitur* out of Michigan, at least in cases where the defendant elected to offer proofs. We think it is a little late in the day to subscribe to any such proposition.

In this case the defendant's proofs to escape the inference of negligence boil down to a claim of emergency. If we are intelligently to pass upon a defendant's testimonial claim of emergency it seems inescapable that we must frankly look and see what he said. There is no other way unless we are to ignore his proofs entirely, whether good or bad. In the case at bar we think that the question of whether there was an excusable emergency or instead whether any emergency which may have existed was all or partially created by the defendant's bus driver himself, was properly a question of fact for the jury; and we say this despite our decision in *Cashaw* v. *Great Lakes Greyhound Lines, Inc.,* 331 Mich 291, where we seemed rather flatly to treat the question as one of law for the court. We think the better rule was announced in the *Adelsperger Case, supra,* where, allowing for the factual difference between that case and ours, we spoke as follows at pp 401, 402:

"Defendant contends that there was here a sudden and unforeseen peril, and that the driver was compelled to do what he did in order to avoid collision, and that therefore there is no negligence, citing *Ottinger* v. *Detroit United Railway,* 166 Mich 106 (34 LRA NS 225, Ann Cas 1912D, 578, 3 NCCA 323); *Clifford* v. *Detroit United Railway,* 216 Mich 377; and other like cases. In the instant case there is evidence of excessive and unlawful speed, which might be found to have important bearing on the suddenness and violence of the stopping and of the swerving of the bus, and hence a causal relation to plaintiff's injuries. A peril produced in part, at least, by

defendant's negligence does not excuse the negligence. The case was for the jury."

The proper rule is well stated in 57 ALR2d at page 11:

"The decisions are in accord upon the proposition that a carrier is not liable for injuries to a passenger resulting from the application of the emergency brakes in order to avoid or prevent an imminent danger not otherwise avoidable and one which it is reasonable to believe will be attended with more serious consequences than the sudden application of the brakes. Where, however, the danger sought to be avoided by the sudden application of the brakes is due to the carrier's negligence, the carrier will not be excused from liability for injury to a passenger occasioned by the sudden stopping of the vehicle. See 10 Am Jur, Carriers, § 1344, p 214."

We may add that the above quotation is drawn from an excellent annotation entitled "Motor Carrier—Sudden Stop or Start" commencing at page 10, superseding an earlier annotation on the subject in 138 ALR 224.

---

It should now be apparent that this writer is something less than ecstatic over all aspects of the quoted 1899 statute, as applied and construed by some of our previous cases. We recognize and approve the obvious and salutary aim of that statute to encourage (though we note that it does not command) defendants to proceed with their proofs and thus discourage the trial and appeal of contested cases piecemeal. The so-called Empson act of 1915* carried the same desirable process beyond jury verdict—in fact it was by virtue of the latter act that the trial court here granted ultimate judgment for defendant des-

* CL 1948, § 691.691 et seq. (Stat Ann and Stat Ann 1957 Cum Supp § 27.1461 et seq.).—REPORTER.

pite the jury verdicts for the plaintiffs. What we criticize and strongly object to is the tendency of many of our trial courts (perhaps excusably prompted by the broad language in some of our past cases) to make a sweeping application of the statute to all cases in all circumstances, regardless of the nature of the case and anything possibly testified to by defendant or possibly still later rebutted by the plaintiff. The results have occasionally been both preposterous and unjust. It is especially harsh in cases such as this one where from the nature of the relationship or situation of the parties the plaintiff through no fault of his own is not in possession of certain important moving facts and the defendant is.

The net result has often been to penalize precisely those plaintiffs who are the most guiltless, the most helpless, the most candid in giving their testimony, the most disengaged from the events leading up to the injury—just as the plaintiffs were in this case. Thus it has been precisely in the typical *"res ipsa"* situation where some of our past interpretations have wreaked the worst havoc. A strict blanket application of the statute plus our unrealistic past refusal consistently to apply or extend the Michigan version of the doctrine of *res ipsa loquitur* (call it what you will) to cases of this kind has in many past instances made it virtually impossible for deserving and aggrieved plaintiffs to recover from plainly culpable defendants. We have thus tended more often than not to turn away from our courts those very plaintiffs most "innocent" of possible wrong and least able on their main case to build a boiler-plate defense to an adversary motion for peremptory verdict. Instead the illusory bone of a jury verdict has been dangled in front of them and then suddenly snatched away. Presumably they could draw some comfort from having come so close.

The cause of a deserving litigant is no less dead when it is slain by a procedural arrow than if there were no cause at all. That in the interests of orderly and prompt dispatch of litigation some otherwise just causes must occasionally thus be abruptly concluded is undeniable; this usually arises, alas, where laggard litigants fail timely to do that which plainly should have been done; we suggest only that no such compelling reasons of larger policy call for such a drastic result in the situation under discussion. Our research discloses that so often have jury verdicts been set aside under this statute that one sometimes wonders why the litigants ever bothered going through the expensive ritual of a jury trial at all; and the jury itself has sometimes seemed all but reduced to an anachronistic and useless appendage summoned merely to preserve the face-saving illusion that a jury trial might still be a matter of right.

It is bad enough that individual litigants have thus been made unjustly to suffer, but that is not all. This has frequently been done with the helpless acquiescence if not active aid of our courts. Too often the trial of cases has become a game of legal hide-and-seek. Just as bad has been the accompanying bewilderment and cynicism of the public—including the jurors who vainly sat on the case—over the baffling mysteries and vagaries of the law. The public has sometimes been righter than it knew.

Take our present case. The jury in our case sat and heard the stories of the 2 plaintiffs. The plaintiffs admittedly didn't see very much, because they couldn't, but they told what they saw. The defendant, under the presumed protection of the statute, could and did take a "free ride" on testifying on the off chance of still gaining a favorable jury verdict, doubtless hoping that testifying would not cost it anything regardless of what its bus driver might inadvertently say or admit. It could eat its legal

cake and have it too.  The jury heard what the bus
driver said and not too surprisingly went out and
found for the plaintiffs.  Nobody ever told the jurors
whether they could or could not weigh and consider
the defense testimony—just as nobody ever told
them that the presumably statutorily-hobbled trial
judge couldn't, no matter what the defendant said or
admitted.

Later they learn that the able trial judge had set
aside their verdict and held for the defendant; that
their role was virtually that of ignored courtroom by-
standers.  Just as one imagines their sense of frus-
tration and disillusion, one wonders how good this
is for our courts, for abstract justice, for the needed
confidence of the public in our processes of judicial
administration.  Is it any wonder that so many of
our citizens are said to shun jury service, or serving,
do so reluctantly and with a resigned air of fatalism
instead of with pride and a sense of effective par-
ticipation in a vital democratic process?  Under what
seems to have been the prevailing practice defend-
ant's bus driver here could boldly have told the jury
he was intoxicated and yet neither the trial judge
nor we could have considered it.  If this example be
extravagant, it is in degree rather than in principle;
and certainly that rule which would ignore anything
such a defendant might ever say is even more un-
realistic and extravagant.  (We are of course as-
suming a defense motion for directed verdict first
made and denied.)

Once the magic words of a defense motion for a
directed verdict were timely incanted we have too
often resolutely shut our eyes to all else.  (We are
not now talking exclusively about *"res ipsa"* situa-
tions.)  That is nothing less than a preposterous
state of affairs and one in which, so far as we can
learn, Michigan, for the most part, has stood coldly
and unenviably alone.  If there are those who think

that civil jury trials should be curtailed or possibly even banished in this State because jurors are not to be trusted—a view which we do not share—we think the problem should be met head-on and not sought to be resolved through the guise and harsh application of a so-called procedural statute.

It is no answer to suggest that these plaintiffs and others in similar situations could have subpoenaed the bus driver for cross-examination under the statute* and thus made his testimony part of their own main case. People who are generally obliged trustfully to ride on crowded buses and other swarming and anonymous public conveyances are most often precisely those who lack the means and entree to learn even whom to subpoena, let alone what they might possibly say. They sue and trust to the Lord. When, coupled with our neat case-law rule to the effect that when the plaintiff thus calls a defense witness he does so at his peril and is bound by that witness's adverse testimony unless it is impeached or rebutted by other testimony (and obviously few such plaintiffs would ever *need* to call the other side if they could successfully rebut their story), this is a narrow hatch indeed to escape the rigors of a strict adherence to some phases of our past practice on defense motions for directed verdict.†

Modern pretrial discovery may offer somewhat more hope of relief, but here too expense and delaying legal chess play could possibly blunt its practical effectiveness. But no matter how effective these other legal tools may or may not be, what we need, in the considered view of this writer, is a brand-new rule of this Court designed to preserve

---

* See CL 1948, § 617.66 (Stat Ann § 27.915).—REPORTER.

† See Mr. Justice BLACK's penetrating analysis questioning such a blanket application of this case-law rule in his opinion in *Monaghan* v. *Pavsner*, 347 Mich 511, commencing at p 527.

the salutary feature of getting the case tried and appealed, but not piecemeal, and at the same time clearly enable our courts, along with our juries, sensibly to consider in a proper case what the defendant may have testified to about the merits of the case being litigated, regardless of any motion for a directed verdict. For too long we have abdicated our responsibility in this important procedural area to the legislature.

Despite the 1899 statute and despite certain of our own past utterances to the contrary, the plain fact is that we have on occasion taken a discreet peek at the defendant's proofs offered after his motion for directed verdict was made and denied. In such instances we have usually got around the statute by the bland expedient of ignoring it, instead saying that where issues of fact are presented by the "testimony in the case" a jury question is presented. A typical instance occurs in *Routhier* v. *City of Detroit,* 338 Mich 449, 456 (40 ALR2d 1114), citing numerous other cases and quoting as follows from the *Davis Case* (*Davis* v. *Belmont Creamery Company,* 281 Mich 165, 169):

" 'The determination of factual questions is purely within the province of the jury. The judgment *non obstante veredicto* was based upon the court's decision on a reserved motion for a directed verdict, and in determining said motion the same considerations are applicable as are pertinent to the determination of a motion for a directed verdict. A verdict cannot properly be directed for one party when an issue of fact, as in the instant case, is presented for the jury's determination. [Citing cases.]' "

In *Routhier* we plainly (top of p 456) took a candid, if fleeting, look at the testimonial claims of the defendant and reversed a judgment granted defendant on motion notwithstanding jury verdict for plaintiff. See, also, the *Adelsperger Case,* cited and quoted

*supra,* and the *Longfellow Case, supra.*    There are others.

We do not criticize the result reached by this line of cases; rather we approve it and seek only to demonstrate that our present decision marks no such great departure from the hallowed past as at first blush might appear.    What we do call for is more consistency and for fewer sidelong glances and more square looks at both the statute and the defendant's proofs.    Now manifestly there can rarely, if ever, be said to exist any real controverted issue of fact (as suggested by the rationale of the foregoing cases) unless the defendant has told his story and the trial court and we have candidly looked at the story he has told.    If that is not what we mean by the above cases then the only other thing we can mean is that a plaintiff can thus get to a jury if his *own* witnesses contradict each other, thus creating a disputed issue of fact, but otherwise not — which is sheer nonsense.

In the *Routhier Case* the disputed issue of fact arose because the defendant in its proofs (offered after its motion for directed verdict was made and denied) denied plaintiff's earlier proofs that its driver was speeding and had run through a stop intersection; in our present case the issue of fact arose because the defendant in effect sought to refute and deny plaintiffs' proofs which created a possible inference of prior negligent driving and, in elaborating that claim and its further claim of a sudden emergency, for the first time testimonially disclosed, for one thing, that its driver might have been following another car too closely.    (As to the right of a jury to find a driver negligent for having continued to follow another motor vehicle too closely, see *McKenzie* v. *Nelson,* 353 Mich 59.)

In *Routhier* there was a direct head-on collision of clashing testimonial facts; in our present case the

defendant sought to escape an inference of negligence by testimony both in attempted direct collision with such inference and, also, in the nature of confession and avoidance, claiming a sudden emergency. We see no difference in principle between the 2 situations. We think that not only the plaintiffs' initial proofs but the defendant's own story—that is, "the testimony in the case," to employ the phrase used in *Routhier*—raised proper issues of fact for the jury, and that upon renewed defense motion for peremptory verdict (tagged with a new Latin label when made after verdict) the trial judge should unabashedly have looked at and considered the defendant's proofs.

We see nothing unfair about such a course. If a defendant has a valid defense he should not ever be afraid to present it; if at his option he chooses to testify and does not disclose a valid defense, or, to put it perhaps more accurately, if reasonable men might reasonably differ whether he has done so, then the cause of justice (if not of legal chess) might better be served by frankly facing up to it, then and there on the trial level, and getting on with another case, instead of indulging the expense and delaying sort of legal peek-a-boo there and here too often indulged in the past.

We still indulge the old-fashioned notion—which we trust is neither too Utopian nor violent—that the primary purpose of all litigation is to elicit facts, assess blame, and try to do justice between the parties. If some of our past interpretations of the 1899 statute have contributed anything whatever to that assumption they have so far totally escaped the attention of this writer.

In the meantime (until we get around to the suggested new court rule) we wonder why more plaintiffs (in situations where the defendant who chooses to testify has arguably supplied "missing links" in

the plaintiff's case) do not at the conclusion of all proofs move to reopen their cases in chief to incorporate into their own proofs the defense proofs thus supplied. This can plainly be done under our common law. The motion is addressed to the discretion of the trial court, but we can conceive of few instances where the basic rightness and justice of such a situation would leave the trial judge feeling so indiscreet as not to grant the motion. Thus even under our past strict interpretation of the 1899 statute the plaintiff's *own* proofs would then more likely tend to make out a case. It would also help untie the hands of the statutorily-hobbled trial judge. It would also help halt the monotonous procession of cases passing before us on the sole issue of whether the trial judge was right or wrong in granting or denying such a peremptory motion. Last of all it might even help the cause of justice.

Cases where this practice is discussed or applied, or both, are: *Detroit & Milwaukee R. Co.* v. *Van Steinburg,* 17 Mich 99, 100; *Corcoran* v. *City of Detroit,* 95 Mich 84; *Piehl* v. *Piehl,* 138 Mich 515; *Beebe* v. *Koshnic,* 55 Mich 604; *Brockmiller* v. *Industrial Works,* 148 Mich 642, 648; *Cornell* v. *Fidler,* 194 Mich 509, 510; *Fontana* v. *Ford Motor Co.,* 278 Mich 199, 201, 202; *Helmer* v. *Dearborn National Ins. Co.,* 319 Mich 696, 698, 699.

More use in this connection could also probably be made of our neglected Court Rule No 32 (1945) and a companion statute (CL 1948, § 618.8 [Stat Ann § 27.988]) perceptively commented on by Mr. Justice BLACK in *Mathews* v. *United Association,* 351 Mich 293, 301.

---

Getting back at last to the case at hand, appellee, which has cross-appealed, itself seeks to raise 2 additional questions for consideration here: (1),

the asserted right to a new trial in the event of reversal for claimed prejudice in the court's instructions to the jury; (2), the adequacy of certain medical and other proofs in the husband's case. The first question is stated in the statement of questions involved; the second is not. The first question is again briefly reasserted in the body of its printed argument; the second is there asserted for the first time (intended possibly as elaboration of the first). Neither question is argued in any real sense of the word and neither is briefed; they are simply announced. We are told in the brief that the claimed faulty instructions may be found elsewhere, but we are not told what these instructions were, why they might be faulty, or precisely where to look for them. This is insufficient to present these questions for consideration in this forum. It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position. The appellant himself must first adequately prime the pump; only then does the appellate well begin to flow. See Court Rule No 67 (1945); *Dolby* v. *State Highway Commissioner,* 283 Mich 609 (117 ALR 538); *Attorney General, ex rel. Commissioner of Insurance,* v. *Lapeer Farmers Mutual Fire Insurance Association,* 297 Mich 174; *Arrand* v. *Graham,* 297 Mich 559 (136 ALR 1206). Failure to brief a question on appeal is tantamount to abandoning it. See *Wortman* v. *R. L. Coolsaet Construction Co.,* 305 Mich 176.

The judgment entered below notwithstanding the verdict is accordingly reversed and the cause remanded for entry of judgment on the verdicts as to both plaintiffs, with single costs to plaintiffs.

Smith, Black, Edwards, and Kavanagh, JJ., concurred with Voelker, J.

Carr, J. (*concurring*). On June 7, 1947, plaintiff Burleigh Mitcham was a passenger for hire in a coach or bus owned and operated by defendant in the city of Detroit. Claiming that she was injured as a consequence of the negligent operation of the bus by defendant's employee, Mrs. Mitcham instituted an action in the circuit court of Wayne county to recover damages. Her declaration alleged that the bus was operated in a careless and negligent manner, that due to such conduct she was thrown against an upright support and seats, and sustained severe injuries necessitating medical care and treatment. On the occasion in question plaintiff was accompanied by her husband, Sage Mitcham, who also sued to recover his damages and expenditures incident to Mrs. Mitcham's injuries. The 2 cases were consolidated for trial.

At the conclusion of plaintiffs' proofs defendant moved for directed verdicts, alleging in support thereof that actionable negligence on the part of defendant had not been shown, that Mrs. Mitcham was guilty of contributory negligence, and that the evidence failed to establish that negligence on the part of defendant city was a proximate cause of injuries sustained by said plaintiff. Decision on the motion was reserved.[*] Following the introduction of testimony on behalf of the defendant the motion was renewed, with like result. The jury returned verdicts in favor of the plaintiffs.

Motions for new trial and for judgments notwithstanding the verdicts were submitted by defendant, the latter motion being granted on the ground that actionable negligence on the part of the operator of

---

[*] See CL 1948, § 691.691 *et seq.* (Stat Ann and Stat Ann 1957 Cum Supp § 27.1461 *et seq.*).—Reporter.

defendant's bus had not been shown. On appeal the questions raised have reference to whether the proofs in support of Mrs. Mitcham's alleged cause of action presented issues of fact for determination by the jury. It is urged in her behalf that her testimony and that of her husband was sufficient to establish a *prima facie* case, and that the trial judge was in error in granting judgment for defendant notwithstanding the verdict of the jury in her favor. No questions are here raised with reference to the husband's right of recovery in his dependent action, other than the issues involved in the principal case. In view of the situation in this respect Mrs. Mitcham will be referred to herein as the plaintiff.

In determining whether the motion for judgment in defendant's favor was properly granted the testimony, in accordance with the recognized rule, must be construed as strongly as reasonably possible in plaintiff's favor. It is likewise true that no inference of negligence may be drawn from the mere fact that she sustained personal injuries on defendant's bus. *Burghardt* v. *Detroit United Railway,* 206 Mich 545 (5 ALR 1333); *Fish* v. *Grand Trunk Western Railway,* 275 Mich 718; *Macres* v. *Coca-Cola Bottling Co., Inc.,* 290 Mich 567; *Crase* v. *City of Detroit,* 341 Mich 132. The question at issue is whether the testimony introduced by plaintiff was sufficient to entitle her to have the questions of negligence, proximate cause, and contributory negligence determined by the jury.

As before stated, defendant moved for a directed verdict at the conclusion of plaintiff's proofs. Such procedure is expressly authorized by CL 1948, § 618.56 (Stat Ann § 27.1036). As amended by PA 1953, No 219, said section reads as follows:

"Upon the trial of any case in any court of record, except probate courts, in this State the defendant,

upon the conclusion of the plaintiff's testimony, may request the court to direct the jury to bring in a verdict for the defendant, or make demurrer to the evidence, without resting his case absolutely."

It is further provided by CL 1948, § 618.57 (Stat Ann § 27.1037), as amended by PA 1953, No 219, that:

"Upon the refusal of any judge of any court of record, except probate courts, in this State to grant such motion, the defendant shall have the benefit of an exception, as in ordinary cases, and without waiving such exception may then introduce testimony and make his defense upon the merits."

Construing these 2 sections together it is apparent that the legislature in the enactment, and in the amendment thereof, intended to give to a defendant in an action of the nature here involved the right to make a motion for directed verdict at the conclusion of the plaintiff's proofs and to have said motion determined on the basis of the record in the case at that time. Referring to the statutory provisions in question as they read prior to the amendments of 1953, which did not change the application thereof in a circuit court case, this Court, citing prior decisions, said in *Snyder* v. *Johnson,* 264 Mich 286, 288, 289, after referring to the fact that defendant had made a motion at the conclusion of plaintiff's proofs:

"The court reserved the motion, to hear all the testimony. The failure of the court to grant the motion was a denial of it. Johnson is entitled to review of the motion and its denial as of the time it was made. * * *

"Assuming that the Rice testimony raised a jury question of Johnson's negligence, nevertheless, as no such question appeared at the conclusion of plaintiff's case, and Johnson then was entitled to a directed verdict, the case must be reviewed without

reference to the Rice testimony, under the cited statutes."

The interpretation of the statute as suggested in the holding in *Snyder* v. *Johnson* has been recognized in numerous subsequent cases, including *Hilliker* v. *Jewel Oil & Gas Co.*, 277 Mich 615; *Conant* v. *Bosworth*, 332 Mich 51; *Manning* v. *Bishop of Marquette*, 345 Mich 130; *Taylor* v. *Butcher*, 349 Mich 581.

In the final analysis the question is whether the testimony of plaintiff and her husband, construed in the light most favorable to her right of recovery, was sufficient to require submission of the case to the jury. Plaintiff claimed in her testimony that the driver of the bus was driving in and out of traffic, that the bus was "weaving and turning," and that, after swerving, the bus came to a sudden stop, resulting in her being thrown against a metal bar. The witness apparently had some difficulty in expressing herself, but the following excerpt from her testimony will indicate her claim as to how the driver of the bus operated it:

"He operated the bus this way, and this and that. Hand on the wheel to the right and left, right and left, and he continued this until this sudden stop. Just before he stopped he was cutting toward the north. Pulled over to the right. No, it wasn't a slow cut. It was a sharp cut. And then I felt this sudden stop, no warning whatsoever."

The witness further testified that she did not see any cars directly in front of the bus, but that there was "plenty of traffic." The testimony given by plaintiff's husband was substantially in accord with her statements. He claimed that the vehicle was "reeling and twisting" as it proceeded through traffic. The question presented is whether the testimony was of such character that the jury might properly

infer (as it apparently did) that the sudden stopping of the bus, with injuries to plaintiff, was a proximate result of the conduct of the operator.

This Court has passed on similar situations in prior cases. In *Adelsperger* v. *City of Detroit*, 248 Mich 399, plaintiff was a passenger for hire in a motor bus of the defendant. The seats being occupied, plaintiff was standing and holding to a handrail. There was testimony indicating that the driver of the bus sought to pass an automobile, that he accelerated his speed, that the bus swerved, that it came in close proximity to the automobile sought to be passed, and that a change in direction of said car caused the driver of the bus to make a sudden application of the brakes accompanied by a turn of the steering wheel. The plaintiff fell and suffered serious injuries. Defendant moved on the trial for a directed verdict on the ground that actionable negligence on its part had not been shown. Commenting thereon, it was said (pp 401, 402):

"In the instant case there is evidence of excessive and unlawful speed, which might be found to have important bearing on the suddenness and violence of the stopping and of the swerving of the bus, and hence a causal relation to plaintiff's injuries. A peril produced in part, at least, by defendant's negligence does not excuse the negligence. The case was for the jury."

See, also, *Fish* v. *Grand Trunk Western Railway, supra; Routhier* v. *City of Detroit*, 338 Mich 449 (40 ALR2d 1114); and *Wells* v. *Flint Trolley Coach, Inc.*, 352 Mich 35. In the *Routhier Case* the facts were somewhat analogous to those in the case at bar. It was the claim of the plaintiff that her injuries resulted from a sudden application of the brakes by the driver of defendant's bus following acts of negligence on the part of such driver with reference

to speed and without proper observations for traffic. It was held that such testimony was sufficient to raise an issue of fact for determination by the jury as to whether the negligent operation of the bus was a proximate cause of plaintiff's injuries. There, as in the case at bar, defendant at the conclusion of plaintiff's proofs had moved for a directed verdict, decision thereon being reserved. The jury returned a verdict in plaintiff's favor, but it subsequently appeared that one of the members of the jury had not concurred therein. The trial judge, on motion, entered judgment for the defendant which this Court reversed, a new trial being ordered because of the situation presented with reference to the jury's verdict.

In *Wells* v. *Flint Trolley Coach, Inc., supra,* plaintiff was injured while alighting from defendant's bus on which she had been a passenger. After pointing out the nature of the duty that defendant owed for the safety of its passengers, and noting that such care was commensurate with the responsibility assumed, it was held that the testimony was sufficient to support a finding by the jury in plaintiff's favor. It was declared (p 40) that the proofs "presented a question of fact for the jury as to whether defendant's driver acted with the degree of care which the above cases state to be required of him and, if not, whether his failure so to do caused plaintiff's injuries and, hence, whether he was guilty of negligence which was a proximate cause."

Each case of this kind must be determined on the basis of the facts involved, with due consideration to applicable principles of law. In the instant case there was testimony from which the jury might properly conclude that the driver of defendant's bus failed to exercise due care for the safety of his passengers, that his conduct in weaving in and out of traffic, in attempting to pass other vehicles, and

otherwise operating the bus in an erratic manner, contributed to the necessity, if such there was, of suddenly applying the brakes. It was within the province of the jury to weigh the testimony and to determine therefrom if the conduct of defendant's employee was negligent and constituted a proximate cause of the injuries sustained by plaintiff. The motion for judgment notwithstanding the verdict was erroneously granted. Defendant's claim that its motion for a new trial should be granted because of statements in the charge to the jury with reference to the husband's claim of right to recover for certain expenditures made by him is not meritorious and does not require extended discussion. The charge as given was not improper in view of the fact that the 2 cases were tried and submitted together.

The judgment is reversed and remanded with directions to set it aside and to enter judgment for plaintiff on the verdict of the jury.

DETHMERS, C. J., and KELLY, J., concurred with CARR, J.