*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SK,

Petitioner-Appellee,

v

JD,

Respondent-Appellant.

UNPUBLISHED
October 15, 2025
9:25 AM

No. 373024
Ingham Circuit Court
LC No. 2024-000644-PP

Before: GADOLA, C.J., and MURRAY and YATES, JJ.

PER CURIAM.

Respondent, JD, appeals of right the trial court's order denying his motion to terminate an amended personal protection order (PPO) that was awarded to petitioner, SK. We affirm.

## I. FACTUAL BACKGROUND

On March 12, 2024, SK filed a petition requesting an ex parte PPO against her ex-husband, JD. The parties, who share several children, were divorced in April 2021. Petitioner asserted that respondent had followed her, made threatening gestures to her, and sent her threatening and hateful text messages on nearly a daily basis. Petitioner alleged that respondent had made the threatening gestures in front of their children. Additionally, petitioner contended that respondent had made telephone calls and sent text messages to another person stating that petitioner would be dead soon. Petitioner said that respondent's messages to her had become increasingly threatening, and that he was continually stalking her. The trial court entered an ex parte PPO that same day, finding that respondent posed a credible threat to the physical safety of petitioner and their children.

On April 4, 2024, respondent moved to terminate the ex parte PPO, stating that the petition contained false statements and omissions, and that petitioner had pursued the PPO for the purpose of obtaining an advantage in an on-going custody dispute between the parties. Respondent denied that he had sent threatening text messages to petitioner. Instead, he stated that any "name-calling" respondent directed towards petitioner was protected speech and not a "true threat."

The trial court held a hearing on April 26, 2024, and heard arguments and testimony from both parties about respondent's motion to terminate the PPO. Petitioner testified that respondent

-1-

had continually stalked her, harassed her by phone, and threatened her life. She said that when she blocked respondent's phone number, he continued that behavior via e-mail. She testified that after the PPO was entered, respondent stopped. Respondent testified that his text messages were taken out of context. He contended that his words to petitioner were not a death threat, but instead meant that petitioner was dead to him and that she would receive bad karma. Respondent admitted that after he found out petitioner was romantically involved with somebody else, he sent "some stupid texts" that he later regretted. Respondent described his relationship with petitioner as tumultuous, and accused petitioner of sending him derogatory text messages. He also pointed out that he had no criminal history. Respondent's counsel gave the court the full set of text messages between the parties in the three months leading up to the issuance of the PPO. Beyond that, counsel reiterated the argument that the text messages included "name calling."

At the conclusion of the hearing, the trial court decided there was "a course of conduct in this circumstance that would justify the issuance of an order." The trial court stated that respondent "seems to live in an alternative universe," and credited petitioner's testimony. The trial court said that the way respondent treated petitioner was abhorrent, and respondent scared the court because of the way he justified his actions. Hence, the trial court denied respondent's motion to terminate the PPO.

On August 22, 2024, the trial court extended the PPO at petitioner's request, setting a new PPO expiration date of August 22, 2025. In her request for that extension, petitioner asserted that respondent had driven back and forth in front of her home, and he had made no effort to see his children or to stay sober. On September 20, 2024, respondent moved to terminate the PPO, which was styled as an objection to the extension of the PPO, asserting that he had not violated the initial PPO and that petitioner's latest allegations were false.

The trial court conducted a hearing on October 4, 2024, to address respondent's motion to terminate the amended PPO. Petitioner testified that respondent had violated the PPO by showing up in front of her house and at the grocery store when she went shopping, even though respondent had no reason to be in that area. Conversely, respondent testified that he was opening a restaurant nearby, which required him to make frequent trips to the Home Depot in that area. He also denied that he was appearing at places near petitioner. But the trial court found that circumstances existed that required a continuation of the PPO based on the parties' testimony and respondent's demeanor. The trial court credited petitioner's testimony and memorialized its conclusions in a written order. Respondent now appeals the trial court's denial of his motion to terminate the amended PPO.

## II. LEGAL ANALYSIS

On appeal, respondent presents four challenges to the trial court's order denying his motion to terminate the amended PPO. First, respondent contends that the extension of the PPO was the product of judicial bias. Second, respondent asserts that the extension of the PPO was improper because there was no evidence that respondent had violated the initial PPO and respondent had no criminal history. Third, respondent argues that petitioner has a history of using PPOs to manipulate a custody dispute. Fourth, respondent insists that a PPO should not be extended if it is being used merely to circumvent a custody dispute.

We begin by noting that respondent provides no more than one sentence in support of each of his arguments, and he has failed to provide any citation to facts in the record or relevant caselaw to support his positions. In light of this failure to provide any explanation for his arguments, this Court deems those arguments abandoned. *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959) ("It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position."). But even if respondent's arguments are considered on the merits, we conclude that respondent has failed to establish that he is entitled to the requested relief.[1]

To support his claim that the trial court was biased against him, respondent points generally to "dismissive remarks and personal attacks" made by the trial court. But beyond those allegations, respondent offers no citation to the lower-court record that might reflect that purported bias.

Due process requires that an unbiased and impartial decision-maker hear and decide a case. *Mitchell v Mitchell*, 296 Mich App 513, 523; 823 NW2d 153 (2012). If a party thinks that a judge is biased or prejudiced for or against a party, that party may move to disqualify that judge. MCR 2.003. The motion must be filed within 14 days of the discovery of the bases for disqualification. MCR 2.003(D)(1)(a). A judge is presumed to be unbiased, so a party moving for disqualification bears the heavy burden of overcoming that presumption. *Mitchell*, 296 Mich App at 523. A trial judge's "remarks made during trial, which are critical of or hostile to counsel, the parties, or their cases, ordinarily do not establish disqualifying bias." *TT v KL*, 334 Mich App 413, 432-433; 965 NW2d 101 (2020) (quotation marks and citation omitted).

Here, respondent never moved to disqualify the judge. Moreover, on appeal, he has failed to establish any disqualifying bias. Even if this Court credits respondent's allegation that the judge made "dismissive remarks and personal attacks," respondent has not satisfied the heavy burden of overcoming the presumption that the trial court was unbiased. See *Mitchell*, 296 Mich App at 523. To the extent that any remark made by the trial court was critical of, or hostile to, respondent, that criticism or hostility does not establish disqualifying bias under the rule identified in *TT*, 334 Mich App at 432-433. Thus, we reject respondent's contention that he is entitled to relief because the trial judge was biased against him.

Next, respondent argues that the extension of the PPO was improper because there was no evidence that he violated the initial PPO. We review a trial court's decision regarding a motion to terminate a PPO for an abuse of discretion. *Pickering v Pickering*, 253 Mich App 694, 700; 659 NW2d 649 (2002). A trial court shall issue a PPO against a former spouse of the petitioner if the

---

[1] We note that, although a challenge to the initial issuance of a PPO is not rendered moot merely because that PPO has expired, *TM v MZ*, 501 Mich 312, 319-320; 916 NW2d 473 (2018), there is unpublished caselaw concluding that when a PPO has expired, a challenge to the extension of the expired PPO is moot. *SF v EB*, unpublished per curiam opinion of the Court of Appeals, issued June 16, 2025 (Docket No. 367196), pp 3-4. Because respondent is challenging the trial court's denial of his motion to terminate the amended PPO, which appears to have expired, and respondent is not challenging the original issuance of the PPO, his appeal is likely moot.

-3-

court finds that there is reasonable cause to believe that the individual to be restrained may commit one or more of the enumerated acts found in that statute, including threatening to kill petitioner or engaging in other conduct that interferes with petitioner's personal liberty or causes a reasonable apprehension of violence. MCL 600.2950(1)(c), (1)(*l*), and (4).

Even if respondent is correct that the evidence did not show that he had violated the existing PPO, that fact alone is not dispositive. Instead, the trial court merely must find a reasonable cause to believe respondent might commit certain acts listed in the statute, including threatening to kill petitioner or engaging in other conduct that interferes with petitioner's personal liberty or causes a reasonable apprehension of violence. MCL 600.2950(1)(c), (1)(*l*), and (4). Because respondent would not be entitled to relief on appeal just because no evidence established that he had violated the existing PPO, respondent has not demonstrated that the trial court abused its discretion when it denied his motion to terminate the amended PPO.

Respondent's final two challenges rest on the premise that petitioner has a history of using PPOs to gain leverage in child-custody cases, and that she did so in this case. Use of a PPO in an effort to gain some perceived advantage in a custody proceeding is a concern that this Court has previously identified. *Pickering*, 253 Mich App at 702 n 3. But this Court noted that "trial courts are well positioned to determine if a party is acting in such an inappropriate fashion" in making its credibility determinations. *Id*.

Respondent provides no citations to the record to support his argument that petitioner had previously used PPOs to manipulate a custody dispute. The only evidence that such manipulation occurred took the form of respondent's allegations at the motion hearings. Indeed, at the hearing on the motion to terminate the amended PPO, he asserted that petitioner wanted to extend the PPO to make it more difficult for him to see his children. When pressed by the trial court, respondent was not able to explain any connection between the PPO and the custody order in place between respondent and petitioner in a separate case. At the hearing on respondent's motion to terminate the initial PPO, respondent stated that petitioner had filed a PPO against another ex-husband, and that respondent had helped petitioner concoct the allegations in that PPO application in an attempt to alter a custody arrangement. But the trial court found respondent's testimony lacked credibility, and there was no evidence other than respondent's testimony to indicate that petitioner was using this PPO, or any previous PPO, to gain an advantage in a custody dispute. Respondent cites *TM v MZ*, 501 Mich 312; 916 NW2d 473 (2018), to establish that PPOs are misused in custody disputes. But that decision does not speak to PPOs in the context of custody disputes because it involved a PPO between neighbors. *TM*, 501 Mich at 314. In short, respondent has failed to establish that petitioner improperly sought a PPO to gain an advantage in a child-custody matter—either in the case at hand or in a previous case—and he has not shown that the trial court abused its discretion when it denied his motion to terminate the amended PPO. *Pickering*, 253 Mich App at 700.

Affirmed.

/s/ Michael F. Gadola
/s/ Christopher M. Murray
/s/ Christopher P. Yates