COURT OF APPEALS

| PEOPLE OF THE STATE OF MICHIGAN, | UNPUBLISHED |
| | October 13, 2016 |
| Plaintiff-Appellee, | |
| | |
| v | No. 327670 |
| | Wayne Circuit Court |
| JEFFREY LYNNTOIN MCINTOSH, | LC No. 15-001028-01-FC |
| | |
| Defendant-Appellant. | |

Before: SAAD, P.J., and JANSEN and M. J. KELLY, JJ.

PER CURIAM.

Defendant, Jeffrey Lynntoin McIntosh, appeals by right his jury convictions of second-degree murder, MCL 750.317, felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced him as a habitual offender, second offense, MCL 769.10, to serve concurrent terms of 20 to 30 years for the murder conviction and 30 to 60 months for the felon in possession conviction, to be served consecutively to two years in prison for the felony-firearm conviction. Because McIntosh has not identified any errors that warrant a new trial, we affirm.

McIntosh's convictions arise from the shooting death of Darnell Spears, which occurred in the late hours of September 19, 2014 in front of Spears's home. McIntosh denied shooting Spears.

## I. SUBSTITUTE TRIAL LAWYER

McIntosh first argues that the trial court erred when it refused to grant his request for a substitute lawyer. This Court reviews a trial court's decision on a motion for substitute counsel for an abuse of discretion. *People v Traylor*, 245 Mich App 460, 462; 628 NW2d 120 (2001).

McIntosh had the right to have a lawyer represent him at trial, but he could not obtain the lawyer of his choice by requesting a substitution. *People v Mack*, 190 Mich App 7, 14; 475 NW2d 830 (1991). Rather, in order to warrant a substitution, McIntosh had to demonstrate both good cause for the substitution and that the "substitution will not unreasonably disrupt the judicial process." *Id.* "Good cause exists where a legitimate difference of opinion develops between a defendant and his appointed counsel with regard to a fundamental trial tactic." *Id.*

To the extent that he made a request for a substitute lawyer, McIntosh did not support his request by demonstrating that there was a legitimate difference of opinion regarding a trial tactic. In a March 2015 letter, McIntosh asked the trial court to order his lawyer "to visit defendant as [sic] to participate in my own defense exspecially [sic] in light of my case [having a possible] life sentence." He asserted that he had "zero access" to his lawyer and stated that his mother had attempted to contact his lawyer "numerous times to no avail." Although McIntosh was obviously unhappy with his trial lawyer's purported lack of contact, he did not state that there had been a breakdown in their relationship. Further, he never claimed that he and his lawyer had a difference of opinion with regard to a fundamental trial tactic. McIntosh did not even request a substitution at that time. As such, the letter did not establish grounds for substituting McIntosh's trial lawyer. Instead, the first time McIntosh arguably asked the trial court to order a substitution was on the second day of trial.

On the second day of trial, McIntosh complained that he "never wanted to go with a jury trial" and "wanted to go with a bench trial," which his trial lawyer strongly opposed. He asserted that he did not "feel like" he was "getting a fair trial," that he did not "feel like" he was "being defended properly," that there were things that he wanted to have done that were not done, that the way he wanted to go about this was not happening, that things he wanted to go on at trial were not happening, that he did not "feel like" his trial was being carried out the way he wanted it to be carried out, and that he had not had enough contact with his lawyer over the previous three months. He also felt that his lawyer's decision to pursue a jury trial prevented him from making the case he wanted to make: "I thought it was things – there's things going on with my case that only I can address. And I didn't want to have to address that to a jury. I wanted to address it to you directly as my judge who would do my case by the law."

McIntosh's trial lawyer disagreed that he had neglected to meet with his client. He stated that he met with him multiple times at the jail and that each visit lasted between 2.5 to 4 hours. He also stated that he had the jail verification forms to prove it. McIntosh responded that the meetings were "useless time" and they "got nowhere" at the meetings. The court stated that if there was a real problem McIntosh should have, and could have, raised it well before the second day of his jury trial. The court also stated that McIntosh's lawyer did a good job arguing at the plea hearing and was known as a capable lawyer.

Examining this exchange in context, there is again no indication that there had been a fundamental breakdown in McIntosh's relationship with his trial lawyer over trial strategy. McIntosh's primary complaint was with the decision to proceed with a jury trial rather than a bench trial. It appears that he may have wanted a bench trial because he believed a jury would unfairly apply a propensity inference when it found out about his prior conviction, which was relevant to his charge of being a felon in possession of a firearm. However, there is no record evidence concerning the decision.

McIntosh waited until the second day of the jury trial to complain about that decision and he did not speak at all about how that decision was made or even allege that counsel did anything inappropriate. And he did not mention the bench trial issue in the letter he sent to the court about a month before his jury trial. McIntosh's lawyer briefly discussed the advice that he gave regarding a bench trial or a jury trial, and from these statements there does not appear to be any issue with regard to his advice or the decision not to pursue a bench trial. In fact, there was some

discussion on the record that the court had knowledge that might have precluded it from hearing the trial. And it is not at all clear that McIntosh would have been able to secure a bench trial even if he had not waited until the second day of his jury trial. A criminal defendant does not have a right to a bench trial; he may only waive his right to a jury with the consent of the prosecutor and the approval of the trial court. MCL 763.3.

Although McIntosh generally asserts that he and his lawyer had a legitimate difference of opinion regarding trial tactics, he has not adequately identified and discussed those differences. "Defendant may not leave it to this Court to search for a factual basis to sustain or reject his position." *People v Norman*, 184 Mich App 255, 260; 457 NW2d 136 (1990). On our review of the record, there is no evidence to suggest that McIntosh disagreed with his lawyer over a fundamental trial tactic. Further, McIntosh's trial lawyer filed every appropriate pretrial motion and was obviously prepared and competent to represent him at trial.

In addition to the lack of good cause, granting a substitution would have unreasonably disrupted the judicial process. McIntosh did not inform the court that he was unhappy with his trial lawyer's handling of the case until the second day of trial. By then the trial court had empaneled a jury, witnesses had been subpoenaed and presumably were present and ready to testify, and the court and the trial lawyers had presumably cleared their calendars for the trial. This was not a case where a new lawyer could have immediately stepped in and taken over without substantial preparation. The charge was open murder. Thus, an adjournment would have been essential. Under these circumstances, even if there had been a breakdown in the attorney-client relationship, the trial court's decision would not amount to an abuse of discretion.

Had there been a legitimate basis for the motion, the trial court's decision might arguably have resulted in a violation of defendant's Sixth Amendment right to counsel. See *Morris v Slappy*, 461 US 1, 11-12; 103 S Ct 1610; 75 L Ed 2d 610 (1983). But McIntosh did not identify the witnesses who should have been secured and it is unlikely that a bench trial would have been granted. Further, he has not provided this Court with an explanation or justification for waiting until the second day of trial to make this request. Thus, he did not establish good cause for the appointment of new counsel and the issue of delay was not determinative. Similarly, the mid-trial request for substitution that would have necessitated a substantial delay was not justifiable given the points of contention between him and his lawyer. Consequently, the denial of the request did not violate his constitutional rights.

## II. TESTIMONY CONCERNING PHONE RECORDS

McIntosh next argues that the trial court abused its discretion when it allowed the admission of "phone record" testimony over his foundation and hearsay objections. This Court reviews for an abuse of discretion a trial court's decision to admit or exclude evidence. *People v Waclawski*, 286 Mich App 634, 670; 780 NW2d 321 (2009). A trial court abuses its discretion when it "chooses an outcome that is outside the range of reasonable and principled outcomes." *Id*.

McIntosh first argues that the prosecution failed to provide a proper foundation for the evidence concerning the phone records at issue because: (1) a federal employee was the only person who actually reviewed the original phone records, and that employee did not testify; (2)

Sergeant Derrick Griffin of the Detroit Police Department testified that the document was produced by the federal employee from the original phone records; and (3) Griffin did not produce the original phone records. As a preliminary matter, we agree with McIntosh that MRE 902(11), which provides that certified records of regularly conducted activity are "self-authenticating," has no bearing here. That rule does not apply because the report that Griffin received was not kept in the course of a regularly conducted business activity and it was not the regular practice of the business to make the record. See MRE 902(11)(B) and (C). Rather, the report came from, and was produced by, a federal employee.

As for MRE 901(a), it provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." McIntosh notes that the prosecution made "no attempt to argue" that the report was admissible under MRE 901(a). He does not argue that the report was inadmissible under MRE 901(a) or provide any further analysis. In any event, the report Griffin received from the federal employee appears to satisfy the authentication requirement of MRE 901. Under MRE 901(b)(1), which provides "examples of authentication or identification conforming with the requirements of [MRE 901(a)]," a matter can be authenticated by testimony of a witness with knowledge that "a matter is what it is claimed to be." Here, Griffin had personal knowledge that the report was exactly what he claimed it to be. That is, Griffin testified that he requested and received a "phone records" report from a federal employee who (he understood) had access to the phone company's data; in context, he was representing that it was the report he was provided on request and relied on, not necessarily that it was the report actually prepared by the federal agent or the accuracy of the report. Griffin's testimony concerning the nature of this report and where it came from was evidence sufficient to satisfy the authentication requirement of MRE 901.

As more fully discussed below, McIntosh erroneously focuses on whether *the actual telephone records in the report* (i.e., the data regarding what numbers were dialed and when) were "authenticated." That issue is irrelevant, however, as the prosecution did not introduce the report to show that the underlying data in the report was accurate. Rather, Griffin mentioned the report to provide the context for his decision to change the focus of his investigation. Because the report was used for this limited purpose that did not depend on the accuracy of the underlying data in the report, the underlying data did not need to be "authenticated."

Along these same lines, McIntosh's argument concerning "authentication" is misplaced because the report (and by extension the information concerning the underlying telephone records contained in the report) was never offered or admitted as substantive evidence during the trial or otherwise treated as such. Because the report was never admitted, McIntosh's argument that the report itself (and by extension its underlying data) had to be "authenticated" is without merit. See MRE 901(a) (emphasis added) (setting forth "[t]he requirement of authentication or identification as a condition precedent to *admissibility* . . . ."). The "evidence" actually at issue here is Griffin's *testimony* concerning the report, not the report or its underlying data.

McIntosh next argues that the trial court erred when it determined that this evidence was not hearsay. McIntosh cites the definition of hearsay and then, without any further explanation or analysis, asserts that the phone records were in fact offered for the truth of the matter asserted (that is, the timing of the call and the phone number from which it was placed and the number

dialed), without acknowledging the prosecution's argument that it sought to admit Griffin's testimony concerning the report only to provide context for Griffin's investigation. McIntosh does not apply the hearsay rule to the facts of this case. He does not address whether any of the exceptions to the hearsay rule are applicable. Again, he merely asserts, without any support or citation to the record, that the phone records were in fact offered for the truth of the matter asserted. By failing to adequately address this claim of error, McIntosh has abandoned it on appeal. See *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959).

In any event, the evidence was not hearsay because it was not offered for the truth of the matter asserted. See MRE 801(c). The trial court never allowed Griffin to testify concerning the accuracy of the underlying phone records contained in the report. Rather, it allowed him to testify that during the course of his investigation he obtained a report indicating that on the night of the murder there were phone calls between the phone number that Napoleon Jones indicated belonged to him and a phone purportedly associated with McIntosh, and that this report is what initially led him to consider that McIntosh may have been involved. His testimony concerning the report provided context for the change in the investigation and was relevant to undermine the potential argument that the officers rushed to charge McIntosh.

Moreover, it is clear from the record that the trial court did not admit Griffin's testimony concerning the report so that it could be used to prove the truth of the matter asserted. Rather, the trial court gave the jury clear instructions that it should only consider this evidence for the limited purpose for which it was admitted, and it also gave an additional instruction to help squarely and simply explain the issue to the jury. That the trial court provided these instructions shows that it did not admit Griffin's testimony concerning the report so that it could be used to prove the truth of the matter asserted in the report. Had the trial court admitted the evidence so that it could be used to prove the truth of the matter asserted, the court would not have instructed the jury that the evidence should not be considered to prove that defendant called Jones. Indeed, the trial court even at one point plainly explained that "all [Griffin's] doing is saying how [the phone numbers are] associated," adding that "it doesn't go to the truth in the matter," and instructing that this evidence "does not prove that the defendant made a phone call and talked to Mr. Jones." Thus, because the evidence was not offered or admitted for the truth of the matter asserted, it was not hearsay, and the trial court did not err in rejecting McIntosh's hearsay objection.

There were no errors warranting a new trial.

Affirmed.

/s/ Henry William Saad
/s/ Kathleen Jansen
/s/ Michael J. Kelly