# STATE OF MICHIGAN

# COURT OF APPEALS

In re SALDANA, Minors.

UNPUBLISHED
June 14, 2018

Nos. 340639; 340640
Van Buren Circuit Court
Family Division
LC No. 16-018602-NA

Before: MURRAY, C.J., and MARKEY and TUKEL, JJ.

PER CURIAM.

In Docket No. 340639, respondent-father appeals by right the order terminating his parental rights to the minor children, LS and TS, under MCL 712A.19b(3)(b)(*i*) (parent's act caused physical injury or abuse); MCL 712A.19b(3)(g) (failure to provide proper care and custody); MCL 712A.19b(3)(j) (reasonable likelihood of harm if returned); MCL 712A.19b(3)(k)(*iii*) (severe physical abuse); MCL 712A.19b(3)(k)(*iv*) (serious impairment of an organ or limb); and MCL 712A.19b(3)(k)(*v*) (life-threatening injury). In Docket No. 340640, respondent-mother appeals as of right the same order terminating her parental rights to the minor children under MCL 712A.19b(3)(b)(*ii*) (failure to prevent physical injury or abuse); MCL 712A.19b(3)(g) and MCL 712A.19b(3)(j). We affirm in both consolidated appeals.

At the time the children were removed, LS was just over one year old, and TS was three months old. TS was born prematurely and spent several weeks in the neonatal intensive care unit (NICU). TS had difficulties that were common in premature infants: bleeding in his brain known as an intraventricular hemorrhage, trouble feeding, and respiratory issues. But all of the issues had improved before he left the NICU. TS was released from the NICU to mother's and father's care less than one month before removal.

On October 4, 2016, TS was taken to Bronson Lakeview Hospital under respiratory arrest and was airlifted to Bronson Methodist Hospital because of his condition. Father was home alone with TS because mother was at a doctor's appointment with LS. TS had been fussy that morning, so father prepared a bottle and propped it up with a blanket in TS's bassinet before he went back to the living room to watch a movie.

Mother and father both admitted to regularly engaging in bottle-propping, which they knew they should not do because it put TS at risk for compromising his airways. TS was also supposed to be wearing a sleep apnea monitor that would alert the parents if he stopped breathing; they could then wiggle his feet or chin to wake him. Mother and father admitted that

-1-

they stopped using the monitor about a week earlier without approval from a medical professional.

When father later returned to the room where TS was sleeping, father found TS unresponsive and turning blue. Father tried wiggling TS, but when he still did not respond, father shook him in an attempt to revive him. Father performed rescue breaths, but when blood came out of TS's mouth or nose, father left to clean the blood off himself before returning to TS. Father called mother and then called 911. Mother and father submitted to a drug screen that day, and both tested positive for marijuana and cocaine.

Dr. Sarah Brown first examined TS on October 5, 2016, one day after the incident. TS was critically ill at that time. He was not responding to touch or even painful stimuli. He was on a ventilator that was breathing for him. He was on several medications to treat seizures and to increase his blood pressure. There was no evidence in TS's medical records that he had issues with seizures in the NICU. The CT scan that was done after the incident showed bleeding over both surfaces of the brain and in the area between the brain and the skull, which were very different locations than the brain bleeding that TS experienced while he was in the NICU. The bleeding also appeared to be of different ages and from at least two different incidents, likely separated by at least a few days. T S's subdural brain and retinal hemorrhaging were indicative of a whiplash injury from head trauma.

When TS was first taken to the hospital, doctors found a left humerus fracture and several rib fractures on the right side of his body that were in the early stages of healing. Once doctors found injuries to TS's ribs that could not have happened on the day of the incident, father reported that he was in a minor car crash with both children about a week before TS was admitted to the hospital. TS was not properly restrained in his car seat at the time, and father did not report the accident to law enforcement.

Doctors typically perform follow-up x-rays on infants two weeks after an injury because fractures are difficult to see in small babies, and it is easier to identify fractures from the healing tissue. In TS's follow-up x-rays, doctors noted additional rib fractures on the left side of his body in a similar location to the right rib fractures and a fracture on the hip end of his right femur.

The children were placed with their maternal grandparents. TS remained in the hospital for more than four months before he was released in February 2017, but he was re-admitted to the hospital in mid-April 2017 for pneumonia. Most of TS's brain cells died from the incident on October 4, 2016, as a result of severe and prolonged oxygen deprivation. A traumatic head injury could precipitate the drop in oxygen, but the bottle-propping could also have contributed to the injury. TS was continuously connected to a feeding tube and had a tracheostomy. Doctors did not believe that he would ever be able to walk, talk, eat, or interact with others by himself. Both grandparents and three maternal uncles went through weeks of training to learn to care for TS's special needs. Mother and father never went through the training, despite multiple opportunities to do so.

Mother and father also failed to participate in parenting time on a regular basis. Although LS did not have the same medical needs as TS, she was diagnosed with post-traumatic stress

disorder (PTSD), and she received in-home mental health services when she was placed with her grandparents. She exhibited severe behaviors after the visits that mother and father did attend, including pulling out chunks of her hair. Once visits with mother and father stopped, her negative behaviors stopped.

The trial court ordered that both mother's and father's parental rights be terminated after finding that statutory grounds for termination had been established and that termination was in the children's best interests. Mother and father now appeal.

Father first argues on appeal that the trial court clearly erred in finding a statutory ground for termination. The trial court found clear and convincing evidence of six separate statutory grounds for termination of father's parental rights—MCL 712A.19b(3)(b)(*i*), (g), (j), (k)(*iii*), (k)(*iv*), and (k)(*v*). Yet father only challenges the trial court's finding under MCL 712A.19b(3)(g) and (j). Because there is no error alleged in regard to the additional four statutory grounds for termination and because the trial court need only find one ground proven by clear and convincing evidence, MCL 712A.19b(3), we need not consider this issue on appeal. See *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009).

In his brief on appeal, respondent-father argues in passing that the trial court erred by not adjourning or bifurcating the termination hearing to allow father to retain an expert and that he was denied effective assistance of counsel when his trial counsel did not call witnesses or present any experts to contradict petitioner's evidence. But because father "failed to properly present [these issues] in his statement of questions presented," he has waived appellate review of them. *In re BKD*, 246 Mich App 212, 218; 631 NW2d 353 (2001).

Finally, although father asserts that termination of his parental rights was not in the children's best interests, he completely omits any discussion of this claim in his appellate brief. Our Supreme Court's observations are apropos here:

> It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position. The appellant himself must first adequately prime the pump; only then does the appellate well begin to flow. Failure to brief a question on appeal is tantamount to abandoning it. [*Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959).]

Father has abandoned this claim. *Id*.; see also *Berger v Berger*, 277 Mich App 700, 750, 712; 747 NW2d 336 (2008) ("A party abandons a claim when it fails to make a meaningful argument in support of its position.").

Mother argues on appeal that the trial court clearly erred in finding a statutory ground for termination of her parental rights. "In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). "If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of

parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). "This Court reviews for clear error the trial court's ruling that a statutory ground for termination has been established and its ruling that termination is in the children's best interests." *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011). A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made. *Id*.

The trial court found clear and convincing evidence to terminate mother's parental rights under MCL 712A.19b(3)(b)(*ii*), (g), and (j), which state in relevant part as follows:

> (3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:
>
> * * *
>
> (b) The child or a sibling of the child has suffered physical injury or physical or sexual abuse under 1 or more of the following circumstances:
>
> * * *
>
> (*ii*) The parent who had the opportunity to prevent the physical injury or physical or sexual abuse failed to do so and the court finds that there is a reasonable likelihood that the child will suffer injury or abuse in the foreseeable future if placed in the parent's home.
>
> * * *
>
> (g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.
>
> * * *
>
> (j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

If this Court concludes that the trial court did not clearly err in finding at least one statutory ground for termination, it "need not consider the additional grounds upon which the trial court based its decision." *In re HRC*, 286 Mich App at 461.

In regard to the statutory ground for termination under § 19b(3)(b)(*ii*), mother claims that there was no evidence to support any intentional act by her that caused injury to TS and that she had no reason to suspect that father would abuse TS. In support of her claim, mother cites *In re LaFrance*, 306 Mich App 713, 725; 858 NW2d 143 (2014), opining that this subsection does not "apply merely to a negligent failure to respond to an accidental injury or naturally occurring medical condition not caused by an 'act' of a parent or other adult." Mother argues this means

-4-

that (b)(*ii*) requires that *she* acted intentionally. But mother misreads *In re LaFrance*, which simply holds that for (b)(*ii*) to apply to a parent who is not the abuser, that parent must fail to protect the child from the other parent or nonparent adult's abusive acts. *Id*.

In this case, the trial court found that father's intentional acts caused TS's brain injuries—whether it was actual child abuse, getting into a car accident with the children while TS was unrestrained, overly aggressive resuscitation techniques, or discontinuing use of the sleep apnea monitor and then inappropriate bottle-propping. Moreover, there were additional fractures and injuries of varying ages that Dr. Brown testified could not be explained as resulting from any sort of accidental cause.

The trial court found that mother was aware that father had issues in caring for TS. She herself was physically abused by father. There were injuries of multiple ages, so there was physical injury or abuse before the incident that brought TS to the hospital. Mother also admitted that she did not usually leave TS alone with father. Mother further knew that father had stopped using the monitor and engaged in bottle-propping, in which she also engaged against medical advice.

Furthermore, because mother had not addressed her substance abuse issues, continued to defend father without showing concern for a cause of TS's injuries, and did not engage in the training to learn how to care for TS's special needs, the trial court had ample evidence that there was a reasonable likelihood that TS would suffer injury or abuse in the foreseeable future if returned to mother. Thus, the trial court did not clearly err in finding a statutory ground for termination under Subsection (b)(*ii*). See *In re Hudson*, 294 Mich App at 264.

In regard to the statutory ground for termination under Subsection (g), mother contends that the trial court's findings and conclusions on the forward-looking requirement (looking at whether a parent will be able to provide proper care and custody within a reasonable time) were replete with speculative opinions. In regard to Subsection (j), mother claims that the severest allegations were against father, but she had no way of knowing that father would abuse TS because there was no evidence that LS was abused.

The trial court, however, found that mother had failed to address TS's or LS's needs when they were in her care. TS was only home for one month and sustained very serious injuries that could only be a result of abuse or neglect. Moreover, mother had shown little interest in learning to care for the children, particularly TS, so that she would be able to reunify with her children in the foreseeable future. The trial court also noted that mother appeared to have issues with substance abuse that had not yet been addressed.

In *In re LaFrance*, 306 Mich App at 729, this Court found that even though the respondent-mother was not present and could not be deemed negligent for the incident that led to the child's special needs, termination was still appropriate under Subsections (g) and (j). The respondent-mother admitted to drug use, engaged in several behaviors after giving birth that raised concerns about her ability to care for a newborn, failed to attend medical appointments for the child after he developed special needs, and failed to attend programs to educate herself about the child's condition. *Id*.

-5-

Similarly, in this case, mother tested positive for marijuana and cocaine on the day that TS was admitted to the hospital. Although she did not have any positive screens leading up to the termination hearing, she missed 87 screens, 31 of which were after adjudication when drug screening was mandated. At the time of the termination hearing, mother had not completed a substance abuse assessment or participated in any substance abuse services. Mother admitted to bottle-propping when she knew it was not safe and admitted to discontinuing use of the sleep apnea monitor without approval by a medical professional, behaviors that raised concern about her ability to care for her children. She was given multiple opportunities to learn to care for TS's special needs, but, at the time of the termination hearing, she had only learned how to suction which is only a very small part of TS's care needs. Although LS did not have the same physical challenges as TS, she suffered from PTSD. Mother missed nearly half of her scheduled visits with LS, which affected LS's mental health and caused behavior issues. Given the above evidence, the trial court did not clearly err in finding statutory grounds for termination under Subsections (g) and (j). See *In re Hudson*, 294 Mich App at 264; *In re LaFrance*, 306 Mich App at 729.

Like father, mother argues in passing that she was denied effective assistance of counsel when her trial counsel did not call witnesses or present experts on her behalf. But as in father's case, mother has waived this claim by not properly presenting this issue in her statement of questions on appeal. *In re BKD*, 246 Mich App at 218.

We affirm.

/s/ Christopher M. Murray
/s/ Jane E. Markey
/s/ Jonathan Tukel

-6-