*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re A D Key, Minor.

UNPUBLISHED
October 10, 2019

No. 348219
Isabella Circuit Court
Family Division
LC No. 2016-000148-NA

Before: REDFORD, P.J., and JANSEN and LETICA, JJ.

PER CURIAM.

Respondent-father appeals as of right the order terminating his parental rights to his minor son, AK, under MCL 712A.19b(3)(c)(*i*), (g), and (j). We affirm.

This Court reviews a trial court's finding that grounds for termination have been established under the clearly erroneous standard. MCR 3.977(K); *In re Rood*, 483 Mich 73, 90-91; 763 NW2d 587 (2009). A finding is clearly erroneous when, although there is evidence to support it, this Court is left with the definite and firm conviction that a mistake has been made. *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010). A trial court's decision must be more than maybe or probably wrong in order for this Court to determine that it is clearly erroneous. *In re Sours Minors*, 459 Mich 624, 633; 593 NW2d 520 (1999). This Court gives deference to the special opportunity of the trial court to judge the credibility of the witnesses who appear and testify before it. MCR 2.613(C); *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989).

First and foremost, we note that respondent-father's appellate counsel fails to provide any supporting legal authority for his position that the trial court erroneously found that statutory grounds existed under MCL 712A.19b(3)(c)(*i*) to terminate respondent-father's parental rights. As our Supreme Court stated in *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959):

> It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position. The appellant himself must first adequately prime the pump; only then does the appellate well begin to flow. Failure to brief a question on appeal is tantamount to abandoning it.

Accordingly, this Court could treat the issue raised by respondent-father as abandoned, and decline to address it on appeal. However, because termination proceedings are considered "quasi-criminal" proceedings, we address respondent-father's arguments on appeal in order to abate any harm done from potentially inadequate appellate representation.

"To terminate parental rights, a trial court must find by clear and convincing evidence that at least one statutory ground under MCL 712A.19b(3) has been established." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013). "Only one statutory ground need be established by clear and convincing evidence to terminate a respondent's parental rights, even if the court erroneously found sufficient evidence under other statutory grounds." *In re Ellis*, 294 Mich App 30, 33; 817 NW2d 111 (2011).

In this case, although respondent-father only challenges termination of his parental rights under MCL 712A.19b(3)(c)(*i*), the trial court terminated respondent-father's parental rights under MCL 712A.19b(3)(c)(*i*), (g), and (j). Because respondent-father fails to challenge two of the statutory grounds for termination, this Court is compelled to affirm the termination order. *In re Ellis*, 294 Mich App at 33. However, we will address respondent-father's entire argument on appeal.

Termination is appropriate under MCL 712A.19b(3)(c)(*i*) where clear and convincing evidence establishes:

> (3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

> * * *

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

> (*i*) The conditions that lead to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

AK was brought under the trial court's jurisdiction in December 2016 because respondent-father had failed to maintain stable and suitable housing, and failed to maintain employment. AK had lived approximately eight different places since his birth, including a rotating homeless shelter. Additionally, there were allegations that AK had been left alone with unsuitable caretakers. Respondent-father admitted to the allegations contained within the petition for temporary custody of AK, and agreed to a case service plan that included a psychological evaluation, parenting classes, mental health counseling, and drug screenings. The case service plan also required respondent-father to maintain stable housing and employment. Respondent-father was permitted to have supervised parenting time with AK.

This case was open for over two years, during which time AK was placed with his paternal grandparents. AK's paternal grandmother is a member of the Saginaw Chippewa Indian Tribe, and both respondent-father and AK are descendants. Accordingly, respondent-father was

eligible for services through the Michigan Department of Health and Human Services (the DHHS), and the tribe. Despite all of the options presented to him following AK's removal, respondent-father failed to maintain housing, failed to maintain employment, failed to complete mental health counseling, and failed to complete parenting classes. Respondent-father was inconsistent with attending his parenting time, and failed to submit to numerous drug screenings. Moreover, at least one drug screen came back positive for THC and cocaine. During the pendency of this case, as a Saginaw Chippewa descendant, respondent-father was offered bus passes and transportation to all counseling appointments and parenting time classes by his caseworkers. As a descendant of the tribe, respondent-father was also eligible for various employment opportunities through the tribe, but was unable to sustain employment for any significant amount of time. At the time of the termination hearing, respondent-father admitted that although he would like AK to return to his care, he still did not have all the things AK would need.

Admittedly, there were times that respondent-father kept up with his case service plan and was cooperative with his caseworkers. Moreover, it was clear that respondent-father and AK had a bond, and AK always looked forward to seeing his father. However, respondent-father was inconsistent throughout the pendency of this case. Respondent-father attended parenting classes offered by the DHHS, but was terminated after a period of incarceration. He was subsequently offered parenting classes through the tribe, but only attended roughly one-third of them. Respondent-father had submitted to a psychological evaluation, after which it was recommended that he attend individual mental health counseling, and to submit to an evaluation for psychotropic medication. However, respondent-father did not consistently attend any counseling, and never submitted to the second evaluation. Respondent-father would attend all of his parenting time for a period, and then no call/no show, leaving AK confused and acting out. Respondent-father would consistently submit to drug screens, even request additional drug screens, and then suddenly stop. Respondent-father would be employed and have housing for a period, then he would lose his job, and get evicted. Respondent-father claimed that the timing of the services conflicted with his work schedule, but for the last few months of the case, respondent-father was unemployed. Moreover, respondent-father's caseworkers offered to pick up respondent-father and drive him to his various appointments or offered him alternative times that worked better with his schedule. However, respondent-father never stayed consistent.

Based on the foregoing, we conclude that the trial court did not err in finding that clear and convincing evidence established that conditions leading to the adjudication continued to exist, and therefore statutory grounds existed to terminate respondent-father's parental rights under MCL 712A.19b(3)(c)(*i*).

Affirmed.

/s/ James Robert Redford
/s/ Kathleen Jansen
/s/ Anica Letica