*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PHYSICIAN HEALTHCARE NETWORK PC,

UNPUBLISHED
April 23, 2020

Plaintiff-Appellant,

v

No. 346157
St. Clair Circuit Court

JOHN V. BROOKS,

LC No. 2016-002096-CK

Defendant-Appellee.

Before: GADOLA, P.J., and STEPHENS and SHAPIRO, JJ.

PER CURIAM.

In this breach-of-contract action, plaintiff appeals from the trial court's judgment awarding plaintiff $114,258.71 in damages. Because we conclude that the trial court correctly interpreted the contract at issue and did not clearly err in its determination of damages, we affirm.

## I. BACKGROUND

Plaintiff hired defendant in 1997 as an infectious disease specialist. Defendant became a shareholder of plaintiff in 1999. At all times during defendant's employment with plaintiff, he was employed under a written employment agreement. Monthly compensation to plaintiff's physicians was based on estimates of the physician's annual revenue less costs and expenses attributed to that physician. Physicians who drew a salary unsupported by their revenue had a negative equity position within the company. In 2013, defendant signed an employment agreement that addressed his negative equity. The agreement provided that defendant had a "cumulative overpayment in compensation from [plaintiff] in the amount of $200,000." Plaintiff had three years from the effective date of the 2013 agreement to recoup the cumulative overpayment by offsetting defendant's compensation. However, if defendant terminated his employment with a remaining cumulative overpayment, that amount became due within 30 days. In the event of an overpayment for an "applicable year," plaintiff reserved the right to adjust defendant's monthly compensation or withdraw money from his operating reserve to bring that physician back to reconcile the overpayment.

In July 2015, plaintiff reduced defendant's monthly salary. Shortly thereafter, defendant began seeking alternative employment and, on December 16, 2015, defendant resigned from

plaintiff's employment, effective January 17, 2016. After defendant had separated from plaintiff, plaintiff demanded that defendant pay $317,145.20, in what plaintiff claimed was negative equity owed by defendant under the 2013 agreement. Defendant refused to pay, resulting in plaintiff filing a complaint against defendant for breach of contract. The primary issue in this case is whether the $200,000 cumulative overpayment recognized in the 2013 agreement continued to grow to the extent there were overpayments in successive years, or whether that amount was fixed.

Following a three-day bench trial, the trial court determined that the 2013 agreement contemplated two categories of overpayment: (1) overpayment in any applicable year, and (2) the $200,000 cumulative overpayment. The trial court concluded that overpayments for any given year after the 2013 agreement was executed did not become a debt owed to plaintiff when defendant discontinued his employment. The trial court awarded plaintiff $114,258.71, representing defendant's $200,000 cumulative overpayment less offsets and adjustments described in the contract. This appeal followed.

## II. STANDARD OF REVIEW

Resolution of this appeal requires us to determine whether the trial court correctly interpreted the 2013 agreement. We review de novo the interpretation of contracts. *Reed v Reed*, 265 Mich App 131, 141; 693 NW2d 825 (2005). "The primary goal in the construction or interpretation of any contract is to honor the intent of the parties." *Rasheed v Chrysler Corp*, 445 Mich 109, 127 n 28; 517 NW2d 19 (1994). Courts "determine the parties' intent by interpreting the language of the contract according to its plain and ordinary meaning." *Bank of America, NA v First American Title Ins Co*, 499 Mich 74, 85-86; 878 NW2d 816 (2016). While the parties interpret the contract differently, neither party challenges the trial court's ruling that the 2013 agreement is unambiguous and therefore extrinsic evidence may not be considered the determine the contract's meaning. Accordingly, we will not consider the extrinsic evidence presented at trial in addressing the issues plaintiff raises on appeal.

## III. ANALYSIS

Plaintiff first argues that the trial court erred when it concluded that the cumulative overpayment that defendant was required to repay was fixed at $200,000. We disagree.

The language of paragraph 4(b) of the 2013 agreement controls this question. Under that paragraph, two categories of overpayments are referred to: "overpayments for [an] applicable year," and "cumulative overpayment." The contract does not define the term cumulative overpayment. Plaintiff's argument is that for each successive year in which there is an overpayment, that amount rolls into the cumulative overpayment. That argument, however, is belied by the contract language providing different recovery methods for each type of overpayment. For overpayments in an applicable year, the 2013 agreement expressly provides that plaintiff "may deduct the excess from the amount credited to [defendant]'s operating reserve, or may withhold future compensation as necessary to reconcile such amounts." Thus, there are two options available to plaintiff to recoup such overpayments. In contrast, the 2013 agreement provides that the cumulative overpayment may be recovered by plaintiff through an "offset [to] [defendant]'s compensation . . . until such time the cumulative overpayment owed to [plaintiff] has been recovered in full, which shall occur no later than 3 years from the Effective Date of this

Agreement." Noticeably absent from the language regarding the cumulative overpayment is the ability to recover that amount by reducing defendant's operating reserve.

Similarly, there is no language in the contract indicating that annual overpayments are added to the cumulative overpayment and are recoverable as such. Indeed, the contract provided that if plaintiff wished to recover the cumulative overpayment, it had to do so "no later than 3 years from the Effective Date of this Agreement." If plaintiff's interpretation were correct—that the overpayment for an applicable year rolled into the cumulative overpayment—there would be no method under which plaintiff would be entitled to recoup an overpayment for a given year if the overpayment occurred more than three years after the effective date of the 2013 agreement. Instead, the clear implication is that the cumulative overpayment was a distinct amount for which plaintiff had three years to recover through offsetting defendant's compensation. However, plaintiff could recoup overpayment for any given year—whether inside or outside of the three-year period following the contract's execution—by oversetting compensation or reducing defendant's operating reserve.

In sum, the 2013 agreement executed by plaintiff and defendant identified a $200,000 cumulative overpayment representing defendant's historical negative equity. The trial court did not err when it concluded that under the terms of the agreement, that amount did not rise on the basis of overpayments in successive years and we affirm its conclusion. Plaintiff had the contractual right to reduce defendant's salary based on later yearly overpayments but did not do so until July 2015, leading the trial court to observe that "[t]he problem for which Plaintiff now complains is of its own making and the result of its own inaction."

Plaintiff's second argument on appeal relates to the manner in which the trial court calculated damages. The determination of damages following a bench trial are reviewed for clear error. *Chelsea Investment Group, LLC v Chelsea*, 288 Mich App 239, 255; 792 NW2d 781 (2010).

Paragraph 10 governed the amount owed to defendant upon discontinuation of his employment. Paragraph 10(a) provided that plaintiff was obligated to pay defendant compensation earned through his employment end date. Paragraph 10(b) stated that, in exchange for signing a release, defendant was entitled to severance in the amount of accounts receivable attributable to his services collected within six months of his employment end date. The trial court determined the amounts owed to defendant under these provisions and subtracted them from the $200,000 cumulative overpayment. Plaintiff broadly asserts that the contract does not provide for any offset or adjustments to the cumulative overpayment. On the contrary, paragraph 10(c) states that the amounts due under paragraphs 10(a) and (b) may be reduced by the cumulative overpayment owed by defendant. Thus, because the cumulative overpayment was greater than the compensation and severance owed to defendant, the trial court properly reduced the damages award by those amounts.

Plaintiff also argues that the trial court erred in offsetting the severance from the damages award because defendant did not sign a release. Plaintiff failed to make this argument below in the trial court and, therefore, failed to preserve it. See *Detroit Leasing Co v Detroit*, 269 Mich App 233, 237; 713 NW2d 269 (2005). Further, the record is silent as to whether defendant signed a release upon termination of employment. Indeed, although plaintiff now argues that defendant is not entitled to any offset, in the trial court plaintiff agreed that accounts receivable should be

credited to defendant, but disagreed as to the amount.  Thus, we cannot say that the trial court clearly erred when it credited six months of accounts receivable to defendant.

Finally, we note that plaintiff does not address the other specific adjustments and offsets made by the trial court, and thus fails to carry its burden of showing that the trial court clearly erred on those matters.  See *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959) ("It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position.").

Affirmed.


/s/ Michael F. Gadola
/s/ Cynthia Diane Stephens
/s/ Douglas B. Shapiro