*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

THOMAS A. COOK and WANETA C. COOK,
Trustees of the COOK SELF-TRUSTEED LIVING
REVOCABLE TRUST,

        Plaintiffs/Counterdefendants/
        Appellees,

v

JOSHUA SELLERS,

        Defendant/Counterplaintiff/Appellant.

UNPUBLISHED
January 28, 2021

No. 351125
Otsego Circuit Court
LC No. 18-017337-CH

Before: SHAPIRO, P.J., and SAWYER and BECKERING, JJ.

PER CURIAM.

In this property dispute, defendant Joshua Sellers appeals as of right the trial court's judgment regarding the existence of an express easement and awarding plaintiffs Thomas A. Cook and Waneta C. Cook, as trustees for the Cook Self-Trusteed Living Revocable Trust, damages for trespass. Finding no errors, we affirm.

## I. BACKGROUND

### A. PROPERTY HISTORY

Defendant and plaintiffs own adjoining property in Hayes Township in Otsego County, known as Parcels 1A and 1B, respectively. Creation of the parcels began in the 1970s when Fret, Inc. obtained and recorded a survey (the 1973 Survey) dividing a large piece of land into seven smaller parcels. As depicted on the survey, Parcels 1 through 6 are stacked vertically, with Parcel 1 as the northernmost parcel, and Parcel 6 as the southernmost. The width of each is an equal distance east to west. Parcel 7 lies immediately to the east of Parcel 4 and extends further eastward to Hayes Tower Road. A section of the 1973 Survey labeled "Road Easement" purported to create a 33' easement with "[r]ights of ingress and egress . . . for roadway purposes" that began at the northeast corner of Parcel 7 and ran west through Parcel 7 until it entered Parcel 4, at which point it split in two directions, one leg running south to serve Parcels 5 and 6, and one running north to

-1-

serve Parcels 1, 2, and 3.  The 1973 easement provided all seven parcels with access to Hayes Tower Road.

In 1977, Fret, Inc. sold all of the land to MPG Partnership, although it did not convey a deed to MPG until 1982.  In 1978, MPG obtained and recorded a survey (the 1978 Survey) that split Parcel 1 into two parcels: Parcel 1A covered the western half of Parcel 1 and Parcel 1B covered the eastern half.  The 1978 Survey provided property descriptions for both Parcels 1A and 1B that explicitly referenced the recorded 1973 easement.  It also purported to create another, different easement "for roadway purposes."  This 1978 easement began at the eastern corner shared by Parcels 3 and 4, continued due north approximately 700 feet so that the centerline was 16.5 feet north of the southern border of Parcel 1B, and then ran 558 feet west, parallel to the southern border of Parcel 1B, ending at the eastern boundary of Parcel 1A.  In other words, it was an easement designed to provide roadway access to Parcel 1A by traversing north across Parcel 2 and then west across Parcel 1B.  Sometime after MPG received the deed to the parcels in 1982, it lost title to the property to the bank and, eventually, Mortgage Corp. of America (MCA) obtained title to all eight parcels.  In 1988, MCA transferred the land to itself as trustee for certain real estate investments.

In the 1990s, MCA began to sell off the eight parcels individually.  Relevant to this litigation, on August 23, 1990, MCA conveyed Parcels 1A and 2 to John and Marilyn Jaeger.  As such, parcels 1A and 2 remained commonly owned.  These two parcels were sold seven years later to David and Lisa Kramp.  In 2001, the Kramps conveyed the parcels to Simon and LeAnne Johnson.  The Johnsons, a married couple, later divorced.  In May 2012, under the terms of their divorce judgment, Simon and LeAnne (who changed her last name to Frederick) each conveyed to the other a quitclaim deed for one of the parcels.  Frederick received Parcel 1A, and Johnson received Parcel 2.  This marked the first time Parcels 1A and 2 were separately owned. A year later, on May 22, 2012, Frederick quitclaimed Parcel 1A to defendant.

Parcel 1B was first transferred from MCA as trustee to MCA itself in 1993.  In 1994, MCA transferred Parcel 1B to Bruce Sholin and Carl Wogelius.  Twelve years later, in 2006, Wogelius quitclaimed his interest in Parcel 1B, along with several other unrelated parcels, to Bruce Sholin.  A few weeks later Sholin and his wife sold Parcel 1B to plaintiffs Waneta and Thomas Cook.[1]  Almost a decade later, in December 2015, the Cooks quitclaimed Parcel 1B to themselves as trustees for their trust (the Trust Deed).

None of the deeds in either chain of title for Parcels 1A and 1B references the recorded 1978 Survey.  Rather, all of them use the property descriptions from the second page of the survey, and both descriptions on that page explicitly reference the recorded 1973 Survey easement and then describe the 1978 easement.

---

[1] For clarity, "the Cooks" refers to Waneta and Thomas as individuals, each of whom is referred to by first name for their sole actions, "their trust" refers to plaintiff trust, and the term "plaintiffs" refers collectively to Waneta and Thomas in their role as trustees, along with their trust.

In June 2018, approximately five years after LeAnne Frederick quitclaimed Parcel 1A to defendant, defendant had a surveyor identify and mark trees on Parcel 1B that he determined were contained within the 1978 easement. Around July 5, 2018, defendant and Frederick wrote to plaintiffs stating that they intended to start "excavating the easement that runs through [plaintiffs'] land . . . by early next week when the heat goes away (July 2018)." In response, plaintiffs filed suit against defendant alleging that the 1978 easement had failed, terminated, or been abandoned, and sought not only to quiet title in their favor, but also damages for defendant's alleged trespass and an injunction preventing defendant from removing trees he had marked on plaintiffs' property. Plaintiffs further alleged that Parcel 1A was not landlocked because an implied easement of necessity had been created when Johnson and Frederick severed unified ownership of Parcels 1A and 2 in May 2012. The trial court granted plaintiffs a preliminary injunction prohibiting the removal of any trees from their property and prohibiting anyone from "making any material changes" to the area of the purported easement, and otherwise required the parties to maintain the status quo.

On October 11, 2018, plaintiffs filed a motion for summary disposition, alleging that the purported easement had been extinguished by merger and ceased to exist when it was no longer strictly necessary for its stated purpose as a roadway. Defendant responded that the express, recorded easement had been in existence for over 40 years, had not been extinguished or abandoned, and remained valid and enforceable. He requested summary disposition in his favor under MCR 2.116(I)(2). In their reply, plaintiffs took issue with a photograph defendant had attached to his response; he had alleged that it depicted a "roadway" on the 1978 easement. Plaintiffs claimed that the photograph depicted a trail that plaintiffs had created "for purposes of offering sleigh rides to the public as part of their small farming operation," and they clarified that the trail "meanders through the wooded areas of Parcel 1-B; does not extend to Parcel 1-A, and only passes across the 33-foot area at issue in one location." Plaintiffs provided an affidavit from Waneta in support. Defendant objected to the affidavit as untimely because it was not filed at least 21 days before the hearing. Plaintiffs advised the trial court that they were still entitled to summary disposition, even without consideration of the affidavit. The trial court agreed not to consider Waneta's affidavit, but stated that it would consider plaintiffs' arguments in their reply brief regarding the factual evidence presented.

Upon review of the evidence, the trial court held that plaintiffs' motion was properly supported with evidence, and that the burden then shifted to defendant to demonstrate with admissible evidence a genuine issue of material fact with respect to whether he had a legal right to access his property by traversing over plaintiffs' property. The court held that the 1978 easement made Parcel 1A dominant to Parcel 2, and that when the Jaegers purchased parcels 1A and 2 from MCA in August 1990, unity of title occurred and the purpose for the easement no longer existed, extinguishing it with respect to Parcel 1A. It was only when Parcel 1A was separated from Parcel 2 in 2012 that any landlocking of Parcel 1A occurred, so an implied easement was created across Parcel 2, whose owner was Johnson. The trial court determined that defendant had not made a proper showing that a roadway existed in the alleged easement area on Parcel 1B because all that was provided was a picture of tire tracks without an affidavit to provide any "foundation to say exactly where it is." The court noted there was no evidence to establish that the 1978 easement

was ever continued in its intended purpose as a roadway, rather than being abandoned. Accordingly, the trial court granted plaintiffs summary disposition pursuant to MCR 2.116(C)(10) on their first count "under the purpose cease[d] to exist theory," but believed it could also grant summary disposition under the merger theory. Plaintiffs conceded that fact issues remained regarding their claims of trespass and negligence. Defendant inquired about joining into the litigation with the owner of Parcel 2 to avoid a separate lawsuit, and the trial court indicated he would need to file a motion and give plaintiffs an opportunity to respond.

On January 21, 2019, defendant filed a motion to amend his pleading, contending there was evidence to establish the existence of an express easement, an implied easement, and an easement by prescription. He also sought to join Johnson, the owner of Parcel 2, as a third party "necessary to establish an easement by express grant, implied grant, implied reservation, necessity or prescription." Plaintiffs requested that defendant's motion be denied because the additional allegations failed to state a claim on which relief could be granted.

During the hearing on defendant's motion, defendant argued that MCA had revived the 1978 easement in 1994 when it conveyed Parcel 1B to Bruce Sholin and Carl Wogelius, plaintiffs' predecessors in title, and that in 2018, when plaintiffs purchased additional land, an implied easement was created because the purchase had landlocked Parcel 1A. Plaintiffs again argued that once MCA deeded both Parcels 1A and 2 to the Jaegers, it was irrelevant whether subsequent deeds referenced the easement because, so long as those parcels remained contiguous with a unified owner, no easement could arise over Parcel 1B for the benefit of Parcel 1A because Parcel 1A had access over commonly owned Parcel 2 and, thus, it was not landlocked. Severance only occurred in May 2012 with the Johnson divorce and quitclaim deeds, at which point Parcel 1A became landlocked. That gave rise to an easement by necessity over Parcel 2 caused by the division of ownership, but it did not implicate Parcel 1B. Plaintiffs also argued that the implied easement argument lacked merit because severance of land creating an implied easement has to occur from a common owner, and plaintiffs' acquisition of additional property in 2018 did not cause any severance. Furthermore, there could be no claim for an easement by prescription over Parcel 1B because it required 15 years of continuous usage, and there was no evidence to support that claim.

The trial court concluded that joinder was not appropriate because there was no evidence that Johnson, owner of Parcel 2, would be liable for all or part of any judgment against defendant, and cross-claims were only permitted against existing parties. However, the court stated that the question of whether amending the claims would be futile was "a pretty close call" that necessitated allowing a limited amendment. It granted defendant the opportunity to amend to add a defense that the easement was revived at some point after the 1994 extinguishment, and "the possibility of an implied easement against the plaintiffs['] property that was bought in 2018." The court also allowed plaintiffs time to file another motion for summary disposition to argue that the trial court should still grant summary disposition on either of the theories. The court denied defendant's motion with respect to a claim of easement by prescription on the grounds that such a claim would be futile.

In April 2019, defendant filed a countercomplaint seeking to quiet title of an easement in his favor, arguing as his basis the existence of an express easement and an implied easement by necessity. Defendant subsequently moved for summary disposition, asserting that the 1978

easement was revived by subsequent descriptions of the easement in deeds from 1993, 1994, 2006, and 2015 in Parcel 1B's chain of title. Plaintiffs filed a countermotion for summary disposition under MCR 2.116(C)(8) and (10), along with two affidavits. One was from Waneta. She averred that plaintiffs had not intended to create an easement across their property, and that any conveyance other than transferring the property to their trust, was error or mistake and contrary to plaintiffs' intent. The other affidavit was from Bradley Bensinger, the lawyer who prepared the 2015 quitclaim deed that conveyed Parcel 1B from the Cooks to their trust. He averred that he had simply included the language from the previous deed, that the individual plaintiffs "never expressed any intention to convey or grant an easement across their property," and that "[t]he deed was not intended to grant or convey any easement across my clients' property but was solely for estate planning purposes."

At a July 2, 2019 hearing on the parties' cross-motions for summary disposition, plaintiffs argued that none of the deeds conveying Parcel 1B could revive the 1978 easement because of the continued unity of title of Parcels 1A and 2, that the only grant of Parcel 1B that occurred after the May 2012 split of Parcels 1A and 2 was the Cooks' transfer of Parcel 1B to their trust, and that there was no evidence of an intent to revive the 1978 easement. Plaintiffs further argued that their purchase of additional land in 2018 could not create an easement for Parcel 1A's benefit because the parcels were not severed from a common owner and the purchase did not render Parcel 1A landlocked. Lastly, plaintiffs noted that Frederick gifted the deed to Parcel 1A to defendant so that no consideration was paid, precluding any estoppel arguments.

Defendant contended that the key to his claim lay in the fact that after MCA transferred Parcels 1A and 2, it still held Parcel 1B until 1993, at which time it transferred Parcel 1B subject to the express recorded ingress and egress easement rights, thereby reburdening Parcel 1B. Defendant asserted that MCA's clear intent was to burden Parcel 1B for the benefit of Parcel 1A and that all of the subsequent deeds in plaintiffs' chain of title continued to burden Parcel 1B with the 1978 easement. Defendant claimed that the splitting of Parcels 1A and 2 and whether the owner of Parcel 1A had another way off the property were irrelevant considerations because of the 1993 MCA deed that expressly revived the 1978 easement across Parcel 1B. He argued that abandonment, merger, and frustration of purpose were also irrelevant in the face of the 1993 MCA Deed.

During questioning by the trial court, defendant's counsel admitted that Parcel 1A first became landlocked when it was split by a common grantor (i.e. the owners of Parcels 1A and 2) in 2012, and he agreed that an easement by necessity over Parcel 2 would have occurred at that time. However, he argued that a court could find an easement be necessity for Parcel 1A with any prior common grantor (owner) in the chain of title, not just the last common grantor. In response, plaintiffs' counsel contended that because it was the 2012 split that rendered Parcel 1A landlocked, defendant had a claim against Johnson for an easement by necessity across Parcel 2 and, although it appeared that defendant did not want to assert such a claim, defendant did not have the right to "just pick any route out that they think is convenient."

The trial court disagreed as a matter of law with defendant's assertion that a party could seek an easement across any property so long as there was a prior common grantor; it concluded that the common grantor had to exist at the time of the severance as did the necessity for access. It granted plaintiffs' motion for summary disposition under (C)(10) and denied defendant's cross-

-5-

motion on the issue of an implied easement. It also essentially adopted plaintiffs' argument that the only deed that could have revived the 1978 easement was the 2015 quitclaim deed from the Cooks to their trust, and the evidence of record established that the Cooks had not intended to revive the 1978 easement. Accordingly, the trial court held that no easement was created by the Trust Deed, "despite the language used." The trial court denied defendant the opportunity to amend his countercomplaint, concluding that any amendment would not be justified.

Plaintiffs filed another motion for summary disposition, this time on their trespass claim, seeking nominal damages of $100 per tree for the 18 trees defendant caused to be painted, in addition to attorney fees. In response, defendant asserted that his surveyor had spray-painted Xs on trees under the authority of the express easement and that there had been no diminution in the value of the land. Defendant also argued that plaintiffs failed to show that they were entitled to attorney fees. Ultimately, the trial court entered a judgment against defendant quieting title to Parcel 1B in plaintiffs' favor and awarding them $180 in damages ($10 per tree) and $258.99 in taxable costs, for a total judgment against defendant of $438.99.

## II. STANDARDS OF REVIEW

This Court reviews de novo a trial court's decision to grant summary disposition. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009). A party is entitled to summary disposition under MCR 2.116(C)(10) when there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. *Id*. at 369. "[T]he moving party must support its motion with affidavits, depositions, admissions, or other documentary evidence in support of the grounds asserted." *Id.* citing MCR 2.116(G)(3). When a moving party properly supports its motion, the burden shifts to the nonmoving party to establish that a genuine issue of material fact exists. *Id.* Any evidence is viewed in the light most favorable to the nonmoving party, *Moraccini v City of Sterling Heights*, 296 Mich App 387, 391; 822 NW2d 799 (2012), but review is limited to consideration of evidence properly presented to the trial court. *Barnard Mfg*, 285 Mich App at 380. The trial court may not weigh evidence, make determinations of credibility, or otherwise decide questions of fact. *Bank of America, NA v Fidelity Nat'l Title Ins Co*, 316 Mich App 480, 512-513; 892 NW2d 467 (2016).

This Court reviews a trial court's decision whether to grant a motion to amend for an abuse of discretion. See *Ford Motor Co v City of Woodhaven*, 475 Mich 425, 447; 716 NW2d 247 (2006). An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes. *In re Kostin Estate*, 278 Mich App 47, 51; 748 NW2d 583 (2008).

## III. ANALYSIS

## A. MERGER, PARTICULAR PURPOSE, & FRUSTRATION OF PURPOSE

Defendant first argues that the trial court erred when it determined that the merger doctrine, as well as the concepts of particular purpose and frustration of purpose, applied in this case. We disagree.

It has long been established that an easement cannot be created over one's own land. *Dimoff v Laboroff*, 296 Mich 325, 328; 296 NW 275 (1941).[2] Additionally, the union of dominant and servient estates in the same owners extinguishes prior easements. *Id.* Therefore, the 1973 and 1978 recorded surveys could not and did not create any easements until at least one of the parcels was held by a different owner. With respect to the three parcels at issue in this case (Parcels 1A, 1B, and 2), unity of ownership first disappeared with respect to Parcels 1A and 2 when MCA sold them to the Jaegers in 1990. Upon that conveyance, the 1973 easement and the 1978 easement had the potential to be created. However, because Parcels 1A and 2 had unified ownership, neither Parcel 1A nor Parcel 2 could have any easement for its benefit that ran across the other parcel. The 1978 easement was intended solely for the benefit of Parcel 1A, as evidenced by the 1978 Survey. There is no question that Parcel 1A received the 33' easement that runs north along the entire distance of the eastern border of Parcel 3. There is also no question that the portion of the 1978 easement that ran north along the eastern border of Parcel 2 never came into existence for Parcel 1A because of its unified ownership with Parcel 2. The question then becomes whether the segment of the 1978 easement that continued north beyond Parcel 2 and westward over Parcel 1B could come into existence with respect to Parcel 1A. That is, if a segment of an easement (here, the middle one) ceases to exist, can the easement, that was designed for roadway purposes, still "continue" forth, or does it necessarily end at the point where it was extinguished, negating any consideration of whether it starts up again on the other side?[3]

It appears that the trial court answered this question by considering the concepts of particular purpose and frustration of purpose. That is, in light of the express language of the 1978 easement providing that it was "for roadway purposes," and the fact that the unified ownership of Parcels 1A and 2 extinguished at least some of the 1978 easement while simultaneously giving Parcel 1A almost that exact same access—just over Parcel 2 instead of Parcel 1B—the trial court concluded that the 1978 easement only existed from Parcel 2 to Parcel 3, was extinguished by merger along Parcel 2, and was extinguished for frustration of its particular purpose for the remainder that purported to run across the southern border of Parcel 1B. We find no error in this reasoning.

The trial court held that the 1978 easement was for a particular purpose—roadway access. This holding is supported by the record. There is no question that the 1978 easement was created for the sole purpose of creating roadway access for Parcel 1A. Until the 1978 Survey, Parcel 1A did not exist, and the portion of Parcel 1 that became Parcel 1B already had access to Hayes Tower

---

[2] Our Supreme Court explained that the common owner of both properties "could not have held hostile adverse possession as against themselves." *Id.* That said, we also note that "an easement may be created by an express reservation in a document of conveyance, as when, at the time a parcel of property is conveyed by its owner, the owner reserves an easement for himself." *Chapdelaine v Sochocki*, 247 Mich App, 167, 170; 635 NW2d 339 (2001). Thus, Fret, Inc. and MPG had the right to reserve easements in anticipation of dividing and selling off the individual parcels to different owners.

[3] There is no question that Parcel 1B has an easement over Parcel 2. At issue is whether there is an easement over 1B to get to 1A.

Road through the 1973 easement. In addition, the language of the 1978 easement itself reflects the intent that it was "for roadway purposes":

> [A]n easement 33 feet wide **for roadway purposes** over part of the Southwest 1/4 of the Northeast 1/4 of Section 27, Town 30 North, Range 4 West whose centerline is described as commencing at the Southeast corner of the Southwest 1/4 of the Northeast 1/4 of said Section 27; thence North 88°29'23" west 16.5 feet to the point of beginning; thence North 0°45'11" West 701.30 feet; thence North 88°28'36" West 588.0 feet to the East line of Parcel 1-A for its point of ending.

Defendant's argument that the trial court erred in applying the doctrine of particular purpose is erroneous. Notably, defendant does not contest that the easement is "for roadway purposes." This concession disposes of defendant's assertion that the easement contains no limiting language. "For roadway purposes" is express limiting language that precludes using the easement for hiking, picnicking, hunting, or any other use. Furthermore, none of the deeds in defendant's chain of title provides that the 1978 easement includes general rights of ingress and egress. Although the property descriptions in the 1978 Survey provide, "Also rights of ingress and egress are granted over an easement 33 feet wide for roadway purposes . . . [,]" none of the property descriptions for Parcel 1A ever included that particular language. Beginning with MCA's deed to the Jaegers, the four deeds in defendant's chain of title provide, "Also together with an easement 33 feet wide for roadway purposes." Thus, defendant's contention that the 1978 easement provided general rights of ingress and egress lacks merit.

Defendant argues that the trial court erred in considering Parcel 2 the servient estate instead of Parcel 1B when considering the doctrine of particular purpose. First, as is clear from the 1978 Survey, Parcels 1B, 2, and 3 are all servient estates to Parcel 1A for purposes of the 1978 easement. Therefore, it was not error for the trial court to consider how the 1978 easement impacted Parcel 2 as a servient estate because, as a matter of law, the merger doctrine precluded Parcel 2 from being a servient estate to Parcel 1A.

Defendant also contends that the trial court erred when it concluded that the easement's purpose was frustrated because, according to defendant, plaintiffs failed to establish that the 1978 easement was totally and permanently incapable of enjoyment, and plaintiffs did not present evidence that attainment and a right of passage over the easement had ceased to exist and become impossible. Most of defendant's argument lacks merit because it is premised solely on Massachusetts and New Mexico law. The sole argument relying on Michigan law is the concept of impossibility. Two of defendant's cited cases involved easements for access to buildings where the easement was extinguished when the building was demolished. The third case involved a railroad easement and reversion of property to the State for unpaid taxes. We presume defendant is arguing that these are the type of situations where Michigan considers extinguishment of an easement for impossibility and, therefore, the facts of this case do not lend themselves to its application. However, the trial court determined that the particular purpose—roadway purposes— for the segment of the 1978 easement over Parcel 1B was frustrated because, after the segment over Parcel 2 disappeared under the merger doctrine, all that was left was what plaintiffs referred to as an easement to nowhere—a 33-foot-wide easement along the southern border of Parcel 1B. That section of the 1978 easement no longer served any purpose and provided access to nothing.

The owners of Parcel 1A had almost identical access by simply following the northern border of their own Parcel 2.

Given the lack of relevant authority and analysis, and defendant's failure to explain any alleged error by the trial court, we conclude that the trial court did not err when it determined that: 1) the portion of the 1978 easement that ran north along the eastern border of Parcel 2 was extinguished under the merger doctrine; 2) the 1978 easement was for a particular purpose—specifically, roadway purposes and inferentially for Parcel 1A to have road access to Hayes Tower Road; 3) the particular purpose for which the 1978 easement was created was frustrated by the extinguishment of the middle of the easement through application of the merger doctrine, creating an "easement to nowhere" along the southern border of Parcel 1B; and 4) the unified owners of Parcels 1A and 2 did not need the orphaned segment of the 1978 easement because they had almost identical access across the northern border of their own property.

## B. ABANDONMENT

Defendant next argues that the trial court erred by concluding that the 1978 easement had been abandoned. Again, we disagree.

Defendant contends that there was no clear manifestation or intent to relinquish the 1978 easement, only simple nonuse, which is legally inadequate. In finding abandonment, the trial court relied on *MacLeod v Hamilton*, 254 Mich 653, 656-657; 236 NW 912 (1931), in which our Supreme Court held that an easement for drainage purposes was extinguished by abandonment when the drain was ultimately established elsewhere. Here, the 1978 easement's roadway purpose was intended so that the owner of Parcel 1A would have access to Hayes Tower Road when it became landlocked by the sale of the individual parcels, cutting it off from the 1973 easement. Because the owners of Parcel 1A received *and used* access from Parcel 2 via the 1973 easement to reach Hayes Tower Road, the trial court did not err by concluding that the situations were similar and that the 1978 roadway "easement to nowhere" had been extinguished by abandonment. Defendant asserts in his reply brief that *MacLeod* is distinguishable because it contains "specific limiting language creating an easement for a particular purpose when the easement was 'for the construction of said water course, ditch or drain and for no other purpose whatever . . ,' " but we find this argument lacking. Although the easement in the instant case does not contain such explicit language limiting its purpose, defendant has conceded that the easement in this case is *only* for roadway purposes. Given the lack of any evidence that the owners of Parcel 1A ever used the purported easement on Parcel 1B, and in light of all of the evidence establishing that the owners of Parcel 1A were able to and did obtain access to Hayes Tower Road through Parcel 2, defendant has failed to establish that the trial court erred.

## C. STRICT NECESSITY

Defendant next argues that the trial court erred by considering the doctrine of strict necessity because it "applies to *implied* easements not express easements." Setting aside that this is the sum total of defendant's argument on this issue, defendant's premise is problematic. Both in the trial court and in this appeal, defendant has argued that the trial court erred by not granting him an easement by necessity, which is an implied easement. *Chapdelaine v Schocki*, 247 Mich

App 167, 172; 635 NW2d 339 (2001). Error requiring reversal must be that of the trial court, and not error to which an aggrieved party contributed by plan or negligence. *Phinney v Verbrugge*, 222 Mich App 513, 537; 564 NW2d 532 (1997), overruled in part on other grounds by *Garg v Macomb Co Community Mental Health Servs*, 472 Mich 263; 696 NW2d 646 (2005). Accordingly, the issue is waived. *Id.*

## D. REVIVAL & SCRIVENER'S ERROR

Defendant next argues that the trial court erred when it held that none of the deeds in Parcel 1B's chain of title revived the 1978 easement and when it accepted plaintiffs' assertions of a scrivener's error in the 2015 deed, which transferred the property to their trust.

Generally speaking, defendant is correct that a reference in a deed to a specific easement, rather than a general statement that the property is subject to easements of record, will revive a previously extinguished easement. See *von Meding v Strahl*, 319 Mich 598; 30 NW2d 363 (1948) (holding that the phrase "subject to all easements of record" means "subject to all valid easements of record"), overruled in part on other grounds by *Harrison v Heald*, 360 Mich 203; 103 NW2d 348 (1960). However, as previously noted, an easement cannot be created over one's own land, and the union of dominant and servient estates in the same owners extinguishes prior easements. *Dimoff*, 296 Mich at 328. Accordingly, the continued unified ownership of Parcels 1A and 2 prevented any deed in the chain of title to Parcel 1B from reviving the 1978 easement for the same reasons that it failed in the 1990 conveyance to the Jaegers. As a result, if the 1978 easement was revived, it could only happen by a deed issued in the chain of title to Parcel 1B that was recorded after the 2012 severance of the ownership of Parcels 1A and 2. The only deed that fits this specification is the 2015 Trust Deed, whereby the Cooks transferred Parcel 1B into their trust.

The trial court noted that the Trust Deed did describe the 1978 easement, but concluded that plaintiffs did not intend to revive the easement, relying on affidavits from Waneta and the drafter of the Trust Deed. On appeal, defendant agrees with the trial court's premise that the crucial factor in determining whether the easement was revived was the intention of the grantor and grantee. However, defendant contends that the trial court erred by relying on the affidavits because plaintiffs never argued and the trial court did not find that the Trust Deed was ambiguous, precluding consideration of anything other than the language of the deed. We conclude that defendant has failed to establish that the trial court's legal reasoning was erroneous.

Relying on *Dep't of Natural Resources v Carmody-Lahti Real Estate, Inc*, 472 Mich 359, 370; 699 NW2d 272 (2005), the trial court noted that there were exceptions to the fundamental inquiry in construing a deed as being the intent of the parties:

"(1) In construing a deed of conveyance, the first and fundamental inquiry must be the intent of the parties as expressed in the language thereof; (2) in arriving at the intent of the parties as expressed in the instrument, consideration must be given to the whole of the deed and to each and every part of it; (3) no language in the instrument may be needlessly rejected as meaningless, but, if possible, all the language of a deed must be harmonized and construed so as to make all of it meaningful; (4) the only purpose of the rules of construction of conveyances is to enable the court to reach the probable intent of the parties when it is not otherwise

-10-

ascertainable." [*Id.*, quoting *Purlo Corp v 3925 Woodward Avenue, Inc*, 341 Mich 483, 487-488; 67 NW2d 684 (1954) (citations omitted).]

The trial court held that the fourth conclusion was "most pertinent to this case" and reiterated that "the only purpose of the rules of construction of conveyances is to enable the court to reach the probable intent of the parties ***when it is not otherwise ascertainable***." Thus, the rules of construction were there to assist in determining the parties' intent when no other information was available. Here, the Cooks conveyed Parcel 1B to themselves as trustees for their trust. For the trial court to determine that an easement was granted to a third party, it would need record evidence that the grantor intended to create an easement that burdened their property for the benefit of another. Although defendant provided the language of the deed itself as evidence, defendant provided no other evidence that plaintiffs intended to revive or create any easement. Looking at the affidavits and the conveyance transaction as a whole, the trial court concluded that the intention of the parties to the Trust Deed was solely to transfer the property to their trust "and because the intention of the parties is crucial, no easement was created by the 2015 deed despite the language used."

Defendant has provided no caselaw that contradicts the trial court's reliance on *Carmody-Lahti*. Further supporting the trial court's decision is Michigan's recognition of a cause of action for equitable reformation of a deed when the language used does not accurately express the intent of all of the parties to the deed. *Scott v Grow*, 301 Mich 226, 236-241; 3 NW2d 254 (1942).

> "Where a written instrument fails to express the intention of the parties because of a mutual mistake as to the interpretation or legal effect of the words of the writing, though there is no misapprehension as to what words have been used, reformation is allowed. It is not necessary moreover, in order to establish a mistake which may be reformed that it should be shown that particular words were misunderstood. 'It is sufficient that the parties have agreed to accomplish a particular object by the instrument to be executed and that the instrument as executed is insufficient to effectuate their intention.' " 5 Williston on Contracts (Rev Ed), p 4423, § 1585, quoting from *Leitensdorfer v Delphy*, 15 Mo 160, 167 (55 Am Dec 137). [*Scott*, 301 Mich at 237.]

In *Kowatch v Darnell*, 354 Mich 197; 92 NW2d 342 (1958), three different parties agreed to buy excess land adjacent to their properties from the Highway Commissioner, who agreed to sell the property because it was not needed for highway purposes. *Id.* at 199-200. The three buyers used the same attorney to draft the deeds, but the deeds contained inaccurate descriptions that unintentionally gave more property to two of the buyers in contravention of the agreement. *Id.* Our Supreme Court affirmed the lower court's decision to reform the deeds in accordance with the request of the party that received less property because "[e]ach of the purchasers took with notice of what they were buying, which in turn, coincided with what the seller intended to sell to each." *Id.* at 200. Thus, like *Scott*, *Kowatch* involved a mistake in the drafted wording of the deed, which did not accomplish what the parties intended.

Here, the intent of the parties was simply to transfer parcel 1B into the trust—not to create, revive, or otherwise change any other sticks in the property bundle—permitting the trial court to reform the deed to match plaintiffs' intent, consistent with *Scott* and *Kowatch*. In light of the trial

-11-

court's ability to consider the affidavits to reform the Trust Deed to match plaintiffs' intent, defendant has failed to show that the trial court erred when it considered the affidavits to determine their intent, particularly given that plaintiffs were both the grantors and the grantees. And, once the trial court essentially reformed the deed to convey what plaintiffs intended, there was no language to revive the 1978 easement. Therefore, defendant has failed to establish that the trial court committed any error in its determination that the Trust Deed did not revive the 1978 easement due to lack of intent.

Lastly, defendant's scrivener's error and estoppel arguments have been abandoned. Although defendant made brief arguments on these issues below, the trial court concluded that the issues were abandoned for lack of analysis. Defendant has not argued on appeal that the trial court's determination of abandonment was erroneous. Having failed to address the merits of the trial court's ruling on these issues, defendant has abandoned them. *Derderian v Genesys Health Care Sys*, 263 Mich App 364, 381; 689 NW2d 145 (2004). Moreover, defendant's brief has merely copied and pasted the exact argument he put before the trial court. Defendant's continued failure to provide any real analysis also constitutes abandonment for failure to "prime the pump." *Mitchem v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959).

## E. EASEMENT BY NECESSITY

Defendant next argues that the trial court erred when it determined that he did not have an easement by necessity over Parcel 1B. This position lacks merit.

An easement by necessity "may be implied by law where an owner of land splits his property so that one of the resulting parcels is landlocked except for access across the other panel." *Chapdelaine*, 247 Mich App at 172. Defendant conceded that it was Johnson and Frederick's divorce that split Parcel 2 from Parcel 1A and rendered Parcel 1A landlocked. Defendant contends, however, that once a parcel becomes landlocked, a property owner may seek an easement of necessity over any parcel with which it once shared a common owner. The trial court correctly concluded that this was not a reasonable extension of caselaw because all property at one time or another has shared a common owner with surrounding properties. Accepting defendant's argument would open every piece of property to an allegation of an easement by necessity at any time. This is the anthesis of the certainty that property law seeks to provide. See MCL 565.106 (noting that the legislative purpose of the marketable record title act is to simplify and facilitate land title transactions).

We conclude that all of the caselaw, including that cited by defendant, establishes that defendant has an easement by necessity over Parcel 2, not over Parcel 1B. When Johnson and Frederick severed the unified ownership of Parcels 1A and 2, "the grantor created a landlocked parcel in its grantee" and it was impossible for the landlocked owner to get from a public road to his property. *Schumacher v Dep't of Natural Resources*, 275 Mich App 121, 130; 737 NW2d 782 (2007). Thus, when ownership of Parcels 1A and 2 was split in 2012, Frederick, as the owner of Parcel 1A, received an easement by necessity over Parcel 2, which was necessarily conveyed to defendant when Frederick quitclaimed Parcel 1A to him. Contrary to defendant's desires, one cannot create a landlocked property and thereby entitle its successor purchaser to claim access to

-12-

that property over a neighbor's land. Because Johnson is not a party to this action, neither the trial court nor this Court can enter an order with respect to defendant's easement rights over Parcel 2.

## F. MOTION TO AMEND

Defendant next contends that the trial court erred by denying his motion to amend to add a claim for an easement by prescription. An easement is acquired by prescription when the elements of adverse possession, except exclusivity, are established. *Marlette Auto Wash LLC v Van Dyke SC Props, LLC*, 501 Mich 192, 202-203; 912 NW2d 161 (2018). Thus, a party claiming an easement by prescription must show clear and cogent proof of possession that is actual, continuous, open, notorious, hostile, and uninterrupted for the relevant statutory period of 15 years. *Id.* In denying defendant's motion to amend, the trial court held that defendant had not provided, either at the time of the motion for summary disposition, or subsequently in support of his motion to amend, any evidence that would support a claim for a prescriptive easement. Defendant is correct that generally an amendment is deemed futile when, "ignoring the substantive merits of the claim, it is legally insufficient on its face." *Early Detection Center, PC v New York Life Ins Co*, 157 Mich App 618, 625; 403 NW2d 830 (1986). However, we agree with the trial court that defendant's claim of a prescriptive easement would have been futile.

Defendant has alleged on appeal that he and his predecessors in title's "use over and across the lands of Parcel 1-B for the benefit of Parcel 1-A has been adverse, under a claim of right, continuous, uninterrupted, open, notorious, peaceable with the actual or presumed knowledge or acquiescence for fifteen (15) years or more." However, "permissive use of property, regardless of the length of the use, will not result in an easement by prescription." *W Mich Dock & Mkt Corp v Lakeland Investments*, 210 Mich App 505, 511; 534 NW2d 212 (1995). Because defendant asserted that the use was peaceable with actual or with presumed knowledge, defendant could not establish the necessary hostility element, rendering any amendment to add a prescriptive easement claim futile.

## G. STATUTE OF LIMITATIONS & LACHES

Defendant next argues that plaintiffs' complaint was barred by the statute of limitations and that laches ought to have been applied. However, defendant has failed to explain to this Court the basis of the trial court's decision or provide any argument to explain how the trial court erred. Our review uncovered that the trial court held that defendant had failed to provide adequate analysis and, on that basis, concluded that the arguments were abandoned for failure to "prime the pump." See *Mitchem*, 355 Mich at 203. On appeal, defendant has simply copied and pasted the exact argument he put before the trial court. Having both failed to address the merits of the trial court's ruling on these issues, or adequately "prime the pump" with argument and analysis, defendant has abandoned this issue. *Derderian*, 263 Mich App at 381; *Mitchem*, 355 Mich at 203.

## H. TRESPASS & DAMAGES

"A trespass is an unauthorized invasion upon the private property of another. However, the actor must intend to intrude on the property of another without authorization to do so." *Cloverleaf Car Co v Phillips Petroleum Co*, 213 Mich App 186, 195; 540 NW2d 297 (1995).

Defendant asserts that on the date his surveyor painted Xs on plaintiffs' trees, he was acting under the authority of an express recorded easement. We presume defendant is implying that he did not have the requisite intent for a trespass claim because neither he nor the surveyor intended to trespass, but rather, believed that their presence on the property was consistent with the purported easement. However, "the defendant's intent in causing a trespass . . . is generally irrelevant." *Traver Lakes Community Maintenance Ass'n v Douglas Co*, 224 Mich App 335, 345; 568 NW2d 847 (1994). Thus, it makes no difference that defendant and the surveyor did not intend that their entry onto plaintiffs' property would be unauthorized. Rather, the requisite intent is the "intent to intrude" or enter onto the property, *Cloverleaf*, 213 Mich App at 195. It is undisputed that this was present. Because defendant and the surveyor intended to enter onto plaintiffs' property, and because the trial court's rulings regarding the status of the easement rendered that entry unauthorized, plaintiffs met both elements of their trespass claim, and the trial court did not err by concluding as much.

Regarding the amount of damages awarded, defendant correctly asserts that the measure of damage in a trespass case is the difference in value of the property before and after the harm, and that where damaged trees "contribute little to the land," replacement or restoration costs will not be awarded and the reduction in value of the freehold becomes the measure of damage. Nevertheless, once trespass has been proven, the landowner is "presumptively entitled to recover at least nominal damages even absent proof of actual injury . . . ." *Adams v Cleveland-Cliffs Iron Co*, 237 Mich App 51, 72; 602 NW2d 215 (1999). Here, the trial court awarded a nominal amount of $10 per tree. This was entirely appropriate under the law, and defendant has failed to argue, let alone show, that $10 per tree is anything other than nominal. Furthermore, plaintiffs used the area around where the trees were painted for winter sleigh rides. Visible painted Xs on the trees would arguably impair the ambiance and experience of such rides, directly impacting plaintiffs' business. The award of $10 per tree is more than reasonable in light of the fact that plaintiffs likely had to remove the paint from all of the trees to prevent it from impacting their business.

Affirmed.

/s/ Douglas B. Shapiro
/s/ David H. Sawyer
/s/ Jane M. Beckering